Ketchum v. Chicago, St. P., M. & O. R. Co. 150 Wis. 211.

KETCHUM, Appellant, vs. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Respondent.

*May 15—June 4, 1912.*

*Railroads: Injury to employee: Projecting car door: "Defect:" Statutes: Construction: Liability dependent on negligence: Evidence: Changing finding by jury: Jurors: Misconduct: Prejudicial effect: Appeal: Grounds for reversal: New trial: Motion after term: Excusable neglect: Discretion.*

1. The words "a defect," as used in subd. 1, sec. 1816, Stats. (Laws of 1907, ch. 254),—relating to liability of a railroad company for "an injury caused by a defect in any locomotive, engine, car," etc.,—mean an existing unsafe and dangerous condition, the result of actionable negligence attributable to the railroad company under the conditions provided by the statute.

2. The amendment of subd. 1, sec. 1816, Stats. (1898), by ch. 254, Laws of 1907, by omitting therefrom the words "if such defect could have been discovered by such company by reasonable and proper care, tests, and inspection," etc., when considered in connection with the other changes made in the section and the text of the amending act as a whole, does not evince a legislative intent to impose an absolute liability upon railroad companies for all injuries sustained by employees by reason of defects in cars or other appliances specified; and such liability exists only where the injury is attributable to some negligence on the part of the company.

3. To warrant the trial court in changing a jury's finding, supported negatively by the railroad company's inspection record and by evidence that no one had observed any displacement, that the door of a box car by which plaintiff was struck was in its normal position when the train left the last station prior to the accident, there should be an affirmative, uncontradicted showing that the door was then and there out of place.

4. The jury having found as stated, and there being no evidence tending to show that the railroad company was negligent in failing to observe that the car door became displaced in going to the next station, a distance of fourteen miles, no legal liability of the company for an injury to a brakeman who was struck by the projecting edge of the door was shown.

Ketchum v. Chicago, St. P., M. & O. R. Co. 150 Wis. 211.

5. The conduct of jurors, while considering their verdict in an action by a brakeman for personal injuries, in requesting the attending officer to procure for them the measurements of certain cars and an engine tender in defendant's yards, and of the officer in complying with such request, was not only improper but highly censurable, regardless of its effect upon the verdict.

6. But, where the information so obtained had no apparent bearing upon the question of defendant's negligence, and the trial court, upon a motion for a new trial based on affidavits showing the facts, decided that it had no effect upon the verdict, such misconduct does not justify reversal of a judgment in favor of the defendant, especially since the enactment of ch. 192, Laws of 1909 (sec. 3072*m*, Stats.), which requires an affirmative showing of error affecting the substantial rights of the appellant. *Havenor v. State*, 125 Wis. 444, distinguished. Timlin, J., dissents.

7. The right of the trial court to entertain a motion for a new trial, after the term, based upon misconduct of the jury, rests upon sec. 2832, Stats. (1898), and in the present case its discretion in that regard does not appear to have been abused.

8. Upon a motion under sec. 2832, Stats. (1898), an affidavit of advice of counsel is not required.

Appeal from a judgment of the circuit court for Dunn county: E. W. Helms, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries sustained on January 23, 1909, through the alleged negligence of the defendant in failing to have the door of a certain box car properly fastened, and in placing the car in the train on which the plaintiff was working while the door was swinging out from the side of the car a distance of eight inches, thereby causing the injuries to the plaintiff through the door coming in contact with him and causing him to fall under the train.

At the time of the injury the plaintiff was acting as head brakeman on defendant's freight train. The car which caused the injury to the plaintiff was put into the train at Eau Claire. At Rusk, a distance of about fourteen miles from Eau Claire, the plaintiff was injured. He testified that when he alighted

4] JANUARY TERM, 1912. 213

from the tender of the engine at the station platform at Rusk, while the train was moving at the rate of about four miles per hour, he was struck on the shoulder by a projecting side door and thrown down and under the wheels of the cars, suffering the injuries for which he seeks recovery.

The jury by their special verdict found:

"(1) At the time of plaintiff's injury, did the lower front corner of the south door of car No. 86974 extend outward and away from its usual and normal position against the side of the car? We answer: Yes.

"(2) If you answer 'Yes' to the last question, then answer this: At the time of plaintiff's injury, how far did the said lower front corner of the said door mentioned in the last question extend to the south beyond its usual and normal position against the side of the car? We answer: Eight inches.

"(3) If you answer question No. 1 'Yes,' then answer this: Would a person of ordinary prudence and experience in running and handling of freight trains, knowing the condition of said door as it was at the time of plaintiff's injury, and in the exercise of his customary care, have anticipated that some employee engaged in the running of said train might probably be injured through being struck by the said door while in the pursuit of his duties about said train? We answer: No.

"(4) Was the bottom of the car door mentioned in question No. 1 in its normal and usual position against the car when the same left Eau Claire on the morning of plaintiff's injury? We answer: Yes.

"(6½) Was plaintiff struck by a projecting car door, which caused him to fall under the train at the time of his injury? We answer: Yes.

"(7) Was the plaintiff at the time of his injury guilty of any negligence which contributed proximately to his injury? We answer: Yes."

The other questions of the verdict and the damages are not material to the issues raised on this appeal.

There was evidence upon the trial that projecting side doors were quite common in the operation of freight trains; that

they were frequent upon all railroads; that, ordinarily, they were caused by a shifting of the carload while the car was in transit; that it was the duty of the railroad employees to replace doors out of place and to reseal and fasten them at small way stations, if this could be done without unloading the car, and that, if it could not be replaced without unloading, the car was allowed to go to a division point with the door projecting; that car inspectors did not consider a car with a projecting door defective and would not note such a condition if it was discovered during an inspection; that the reason for securely fastening the doors on freight cars was the desire to assure the security of the freight; and that the train to which the car in question was attached had been running at an unusually high speed just before the accident, and that such speed was liable to throw the load of a car against the car door and spring it out into the position here testified to.

The evidence also tends to show that the employee who sealed the car in question when it was loaded had not reported anything wrong with the car at that time; that the car inspectors at Eau Claire observed nothing defective in the car and made no report showing a defective condition; that this particular car could not have been sealed unless the bottom of the door was in its normal and usual position against the side of the car; that the inspectors at the terminal station to which the car was carried after plaintiff was injured observed nothing about the car which would be reported in their records as a defect.

It appears that the plaintiff was an old railroad man; that cars were of different widths, and many cars would project farther beyond the rails than would this comparatively narrow car with the door projecting as plaintiff testified it did. There is evidence justifying the inference that the plaintiff alighted from the tender in such a way that he would probably have fallen to the ground, if he alighted as he described it; and that the plaintiff had stated immediately after the in-

jury was received, in response to a question of how the accident had happened, that he had slipped.

Plaintiff moved that the verdict be changed in certain particulars and for judgment on the verdict as so changed, and, in the event of a denial of this motion, for a new trial. The defendant moved for judgment on the verdict, or in the alternative for judgment notwithstanding the verdict. On June 16, 1910, a day of the March term of the trial court, an order was made granting defendant's motion for judgment on the verdict. Judgment was duly entered on this order on July 2, 1910. On July 8, 1910, the plaintiff served notice of appeal from the judgment, and on August 1, 1910, served a proposed bill of exceptions. On August 6, 1910, the case was by stipulation continued to the January, 1911, term of the supreme court, and the clerk was authorized to return the record to the clerk of the trial court. On August 11, 1910, the record was received by the clerk of the trial court. The March, 1910, term of the trial court ended on September 12, 1910, and was not adjourned.

On September 10, 1910, the plaintiff moved the supreme court, on an order to show cause and certain affidavits, that the record and the cause be remanded to the trial court to enable plaintiff to make the motion for a new trial. On October 4, 1910, this motion was denied by this court. This motion was made to enable the trial court to entertain a motion for a new trial upon the grounds that the jury had improperly called for evidence from the officer in charge, that on or about August 11, 1910, the plaintiff was apprised that such misconduct had taken place, and that plaintiff's counsel had proceeded diligently to collect the evidence to establish these facts. On January 17, 1911, the appeal pending in this court was dismissed by the plaintiff and the record returned to the trial court. On February 24, 1911, the plaintiff moved for a new trial, that the judgment be vacated, the verdict set aside and a new trial granted on account of the misconduct of the

jury and the officer in charge during their deliberations, and to amend the bill of exceptions. On June 29, 1911, the court denied the motion for a new trial, but allowed the amendment of the bill of exceptions so as to include the proceedings relative to the motion for a new trial on the ground of misconduct of the jury.

This is an appeal from the judgment and from the order of June 29, 1911.

For the appellant there was a brief by *Samuel A. Anderson* and *W. H. Stafford,* and oral argument by *Mr. Anderson.*

For the respondent there was a brief by *Jas. B. Sheean* and *Bundy & Wilcox,* and oral argument by *R. P. Wilcox.*

*C. H. Van Alstine,* as a friend of the court, also filed a brief and argued orally as to the construction due to sec. 1816, Stats. (1898), as amended by ch. 254, Laws of 1907.

SIEBECKER, J. The appellant assails the court's ruling denying him judgment on the verdict of the jury. The argument is that the facts found show that there was a defect in the car, namely, a projection of the car door outside of its normal position to the extent of eight inches, and that this projection of the car door caused him to fall under the train and produced his injuries, and that the defendant is therefore liable. This claim is based on the idea that sec. 1816, Stats. (1898), as amended by ch. 254, Laws of 1907, imposes an absolute liability on railroad companies for all injuries sustained by employees caused by a defect in any car or other appliance specified in the statute and used by such employees in and about the business of their employment. This claim has not heretofore been presented under this statute. The ground of this contention is that the changes made in the phraseology of sec. 1816 by the amendments to it in ch. 254, Laws of 1907, indicate that the legislature intended that railroad companies should be absolutely liable for such injuries, regardless of their negligence or of the contributory negli-

gence of the person injured.   The amendment to subd. 1 of
this section omitted therefrom the words, "if such defect could
have been discovered· by such company by reasonable and
proper care, tests or inspection; and proof of such defect shall
be presumptive evidence of knowledge thereof on the part of
such company."   Were this change of subd. 1 of this statute
the only amendment, the argument of plaintiff's counsel might
be persuasive in favor of the claim made by them.   We must,
however, consider all of the changes made in this section of
the statute by ch. 254, Laws of 1907, and ascertain therefrom
what the legislative intention was in amending this law regu-
lating the liability of railroad companies for injuries' sus-
tained by their employees.   The context of the amending act
(ch. 254, Laws of 1907) discloses that the provisions thereof
were based on the idea of responsibility for negligence, and
subd. 1 of the statute is a part of and must be read in connec-
tion with the subsequent provisions.   The provisions of the
act, as a whole, evince a purpose to frame a scheme for regu-
lating by statutory rules the liability of railroad companies
for injuries to employees arising from a want of care of both
the employer and the employee under the special conditions
and circumstances for which a procedure in actions to recover
damages for such injuries is prescribed.   The provisions of
the different parts of the act are so interrelated as to require
that they be interpreted together in order to ascertain their
meaning and the object sought to be accomplished by the leg-
islature.   Examining the statute from this viewpoint and giv-
ing effect to all of its parts, it is obvious that subd. 1 refers
to and regulates liabilities for injuries resulting from action-
able negligence, under the circumstances embraced therein.
The first paragraph of the act, providing that liability shall
be "subject to the provisions hereinafter contained regarding
contributory negligence on the part of the injured employee,"
indicates in unmistakable terms that it pertains to injuries
which result from negligence.   The declaration respecting con-

tributory negligence, in its legal sense and implication, is that the legislature was dealing with injuries arising from negligence, and shows that the statute has no reference to injuries resulting from wilful misconduct or mere accident and that it can refer only to injuries resulting from negligence as the term is applied in the law. Furthermore, the terms "every action" in subd. 3, "all cases" in subd. 4, and "all cases under this act" in subd. 5 of the act, obviously refer to and embrace all cases of injuries comprehended in the preceding paragraphs and exclude the idea that any of the cases arising within the statute are not subject to these provisions of the act.

In the light of this meaning of the statute, there is no room for the argument that the defendant is liable to the plaintiff for injuries resulting from the defect in the car regardless of defendant's negligence or of the plaintiff's contributing negligence. The words "a defect," as used in subd. 1 of sec. 1816, must be held to mean an existing unsafe and dangerous condition, the result of actionable negligence attributable to the railroad company under the conditions provided by the statute. In the following cases the statute was so applied, though the question for construction here presented was not specifically submitted or discussed: *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N. W. 309, 120 N. W. 756; *Haring v. G. N. R. Co.* 137 Wis. 367, 119 N. W. 325; *Boucher v. Wis. Cent. R. Co.* 141 Wis. 160, 123 N. W. 913; *Kiley v. C., M. & St. P. R. Co.* 142 Wis. 154, 125 N. W. 464; *Tidmarsh v. C., M. & St. P. R. Co.* 149 Wis. 590, 136 N. W. 337.

It is contended that the court erred in denying plaintiff's motion to change the jury's answer to question 4, finding that the bottom of the car door was in its normal and usual condition when the train left Eau Claire. There is no direct evidence that the door was out of position at Eau Claire, and it appears from plaintiff's evidence that it was first observed at Rusk to be out of place. The facts and circumstances show that no one observed any displacement of the door at

Eau Claire and the inspection record tends to show that the door was then in its normal position. This furnished sufficient evidentiary basis to sustain the jury's finding that the door was not out of place at Eau Claire. To warrant a disturbance of this finding by the court required an affirmative, uncontradicted showing that the door was then and there out of place. This is not the state of the evidence, and hence the court properly denied plaintiff's motion to change the answer to question 4.

There is no evidence tending to show that the railway company was negligent in not observing that the door became displaced in going from Eau Claire to Rusk, a distance of about fourteen miles. The fact is established, then, that the company did not negligently cause this defect in the car door which plaintiff alleges caused his injuries, and it follows that no legal liability on the part of the defendant for the damages the plaintiff suffered was shown. In this state of the case it is unnecessary to discuss other questions presented by the appellant respecting the insufficiency of the verdict, or any other questions raised regarding the verdict, because they do not affect the result of the finding in question 4, which establishes that the defendant did not negligently cause the defect complained of.

It is strenuously contended that the court erred in denying plaintiff's motion for a new trial on account of the misconduct of the jury and the officer in charge, after the jury had retired to deliberate upon their verdict. It appears that the jury, during their deliberations on their verdict, requested the officer in charge to procure for them the measurements of cars and an engine tender in defendant's yards at Menomonie, and that the officer obtained the requested measurements and furnished them to the jury. These facts are properly shown by the affidavits presented to the court. This extraordinary conduct of the jurors and the officer calls for action by the trial court imposing appropriate punishment

on the offenders.    It is clearly reprehensible, regardless of whether or not it in fact prejudicially affected the verdict rendered, and an honest and proper administration of the law calls for the imposition of appropriate punishment by the trial judge on the offenders.    The exercise of the judicial functions of trial courts, in order that they may so apply their powers as to attain impartial trials and prevent jurors and officers from indulging in conduct that is incompatible with the high standard necessary to secure the best results in the administration of justice, must rest in their sound judgment, and we doubt not that it has been fully invoked on all proper occasions.

It is argued that this case is ruled by the decision in *Havenor v. State,* 125 Wis. 444, 104 N. W. 116.    We do not regard the misconduct here complained of as within the decision of that case.    In that case it was held that all communication by the trial court with the jury, after they had retired to deliberate on their verdict, in the absence of the parties and their counsel, is prohibited unless it be in open court, and that no party should be put to the burden of showing that such a communication was in fact prejudicial.    The reason for such a rule, where the trial judge is involved, is obvious.    No party should be required to bear the burden of convincing a trial judge that his conduct has prejudicially affected a verdict.    The doctrine of that case has been adhered to in the subsequent case of *Hurst v. Webster Mfg. Co.* 128 Wis. 342, 107 N. W. 666, and in the case of *Du Cate v. Brighton,* 133 Wis. 628, 114 N. W. 103, but is not to be extended to cases arising out of different circumstances. *Sedlack v. State,* 141 Wis. 589, 124 N. W. 510.    In the instant case the fact is that the jury requested the officer to ascertain the exact measurements of a car and an engine tender, and it does not deal with an improper communication to the jury by the trial judge under whose direction they

were performing their duties in the case. True, their conduct was improper, but from its nature it is not to be treated as coming within the rule of the *Havenor Case,* for it could be impartially considered by the trial judge and he could ascertain whether or not it operated prejudicially against the party complaining of the verdict. Unless the record discloses that it affected the substantial rights of the complaining party, within the provisions of sec. 2829, Stats. (1898), it should be disregarded. We must then test the ruling on this motion by the provisions of this section:

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

The trial judge, in passing on appellant's motion for a new trial, evidently concluded that the jurors' misconduct did not affect the verdict they rendered. Obviously, the trial judge is in a situation where he is best informed of the probable effect, if any, such conduct would have on the verdict. The trial judge's denial of the motion for a new trial must have been based on his belief that the jurors' misconduct in no way affected the verdict and the result of the trial. His conclusion on the subject is of much weight in determining the point on appeal to this court, and should not be disturbed unless it satisfactorily appears that he erred in this respect. We find nothing in the record that leads us to a belief that the ruling of the trial court was clearly erroneous. It is apparent that the forbidden evidence has no bearing on the finding embraced in question 4. This supports the trial judge's view that it had no weight with the jury in deciding the issue of the defendant's negligence respecting the existence of the defect in the car door. All the reasonable inferences are that the improper information so acquired had no effect upon their

finding that the defendant did not negligently cause the door to be out of place when the train arrived at Rusk. Ch. 192, Laws of 1909, now sec. 3072*m*, Stats., declares that no judgment shall be reversed or set aside or a new trial granted upon the grounds here urged, "unless in the opinion of the court, . . . it shall appear that the error complained of has affected the substantial rights of the party seeking" such relief. In applying the rule of this statute it is necessary that the record show affirmatively that the trial court erred, that is, that the facts disclosed in the record overcome the presumption in favor of the trial court's ruling on the point raised, to warrant this court in holding that the trial court's ruling did in fact deprive the appellant of a substantial right and hence entitled him to a reversal of such ruling. See *Oborn v. State,* 143 Wis. 249, 126 N. W. 737; *Parb v. State,* 143 Wis. 561, 128 N. W. 65; *Wiese v. Riley,* 146 Wis. 640, 132 N. W. 604.

Whether or not the trial court had the right to entertain the motion after the term, had to be determined under the provisions of sec. 2832, Stats. (1898), which provides that a court may within one year from notice thereof relieve a moving party from the judgment against him "through his mistake, inadvertence, surprise or excusable neglect." The trial court may, "in discretion," grant such relief. Obviously, the trial court in this case considered that the appellant was excusable for not moving during the term and that he had proceeded with due diligence to bring the matter to its attention. We cannot say that the court abused its discretion in this regard. *Kalckhoff v. Zoehrlaut,* 43 Wis. 373; *Robbins v. Kountz,* 44 Wis. 558.

An affidavit of advice of counsel is not required in moving under sec. 2832. *Bloor v. Smith,* 112 Wis. 340, 87 N. W. 870.

There is no showing in the record that the judgment appealed from was improperly awarded.

*By the Court.*—Judgment affirmed.

TIMLIN, J. I concur in the construction given to sec. 1816, Stats. (Laws of 1907, ch. 254). But I think a new trial should have been granted on account of misconduct of the jury. I am afraid of this case as a precedent on the latter point.