DISHMAKER, Respondent, vs. HECK, Appellant.

*January 13—February 9, 1915.*

*Automobiles: Collision: Wilful act: Instructions to jury: Mistake of fact: Duty of counsel: Immaterial errors: Jurors: Qualification: New trial: Communication between court and jury: Mistaken ideas of jurors: Affidavits to impeach verdict.*

1. If the trial court was mistaken in stating to the jury that it was agreed by counsel that there was no evidence that the accident in question occurred otherwise than in one of two ways, it was counsel's duty to call attention to the mistake at once, so that it could be corrected.

2. Where, in such case, there was in fact no 'evidence that the accident occurred otherwise than as stated, it was immaterial whether there had been an. agreement between counsel to that effect or not.

3. Where a question submitted to the jury asked whether defendant wantonly, wilfully, and maliciously ran his automobile against that of plaintiff, and the jury were correctly charged that if the accident happened in the way claimed by plaintiff the only conclusion to be drawn was that defendant wilfully and wantonly committed the act, there was no need for any abstract instruction on the subject of gross negligence.

4. In an action based on a collision between automobiles driven by rival dealers, a juror stated on his *voir dire* that he had dealt

with plaintiff but that he owed him nothing, that he owned no car, and that he was not negotiating with plaintiff for a car. It afterwards appeared that before the trial the juror had ordered a car from plaintiff and that it was delivered and paid for immediately after the rendition of the verdict. *Held* that, the statements of the juror being literally true and the trial court being satisfied that he was competent and fair, there was no error in refusing a new trial.

5. All communications between the court and the jury should be in the open court room and free from any suspicion of secrecy. But where the jury, after retiring, were unable to decipher a word in the special verdict, and the foreman, returning into open court, asked the meaning of the word, to which the trial judge replied, "punitive, by way of punishment,"—the proceedings being taken down by the official reporter,—there was no prejudicial error.

6. Affidavits of jurymen to the effect that after the foreman returned to the jury room and announced that the word was "punitive" there was discussion as to what would become of the punitive damages if any were awarded, the foreman and others contending that they would be paid to the county, and that, although the foreman did not represent that the court had given him any instructions on the subject, some of the jurymen believed that he was stating what the judge had told him, and that they would not have awarded punitive damages if they had known that such damages would go to plaintiff—were not admissible to impeach the verdict.

APPEAL from a judgment of the circuit court for Kewaunee county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

Action for damages resulting from a collision of two automobiles. The parties were rival dealers in automobiles. The plaintiff, driving a Ford runabout, in which he and his eleven-year-old son were seated, was approaching Kewaunee and going up a long hill, called Lutien's hill, in the outskirts of the city. The defendant, driving an E. M. F. automobile in which beside himself were his wife, daughter, and two other ladies, was just ahead of the plaintiff, going in the same direction. As they neared the top of the hill the plaintiff drew out to the left of the defendant and attempted to pass him. When the plaintiff's car came up with the defendant's car

there was a collision, as a result of which the plaintiff's car was somewhat injured and pushed into the ditch, the plaintiff shaken up, and his son thrown out of the car. According to the testimony of the plaintiff and his son, the defendant saw the plaintiff's car coming up and purposely turned the front wheels of his own car into the plaintiff's car. According to the testimony of the defendant and the two ladies who were with him, he did not see the plaintiff at all before the collision and the plaintiff ran his car into the defendant's car.

The complaint contained two causes of action, one alleging negligence, the other wilful and malicious wrong. The court in its charge to the jury withdrew from their consideration the cause of action founded on negligence. The jury returned the following special verdict:

"(1) Did the defendant wantonly, wilfully, and maliciously run his automobile upon and against plaintiff's automobile while the plaintiff was attempting to pass defendant on July 10, 1912? A. Yes.

"(2) If your answer to the first question should be 'Yes,' then answer this: At what amount do you assess the plaintiff's compensatory damages resulting directly from the collision between the two cars? A. One hundred ($100) dollars.

"(3) If your answer to the first question should be 'Yes,' then answer this question: What amount if any do you assess, in addition to compensatory damages, for punitive damages? A. Five hundred ($500) dollars."

A motion for a new trial was made, based on alleged errors in the admission of evidence and in the charge of the court, as well as upon misconduct of the jury. The motion was overruled and judgment entered for the plaintiff, from which the defendant appeals.

For the appellant there was a brief by O. H. Bruemmer, attorney, and Nash & Nash, of counsel, and oral argument by E. G. Nash.

For the respondent there was a brief by Minahan & Minahan, and oral argument by Eben R. Minahan.

WINSLOW, C. J.    The errors alleged will be treated in their order.

1.  The court told the jury in the opening of the charge that plaintiff's contention was that the defendant suddenly turned his steering wheel and ran into the plaintiff, while defendant's contention was that plaintiff's car struck defendant's car on the side without defendant's fault, and that it was agreed by counsel and the court that there was no evidence showing that the accident happened in any other way than in accordance with one of these two contentions.    This is now complained of by the defendant, and affidavits were introduced tending to show that the defendant's counsel made no agreement of that kind.    There are two sufficient answers to this claim: *first,* if the statement was incorrect it was a mistake of fact which the trial court innocently made, and it was counsel's duty to call attention to it at once in order that it might be corrected; *second,* whether there was any such agreement or not is quite immaterial, because the situation of the case was exactly as the court stated; and hence it made no difference whether there had been an agreement between counsel to that effect or not.    In this connection the court also said to the jury:

"There is nothing showing that the collision happened in any other way than either that which is claimed by the plaintiff or that which is claimed by the defendant; and it is also conceded that if the claim of the plaintiff is correct in theory, that the accident did happen as they claim, that *Mr. Heck* did what he did, the only conclusion drawn from that is that he wilfully, intentionally, and maliciously ran his car against that of the plaintiff.    So that is the meaning of the question, Did the defendant wantonly, wilfully, and maliciously run his automobile upon and against the plaintiff's automobile while the plaintiff was attempting to pass the defendant on July 10, 1912?"

Complaint is made of this instruction in that it does not give the jury any adequate guide on the subject of gross neg-

ligence. There does not seem to have been any necessity for any abstract discussion of gross negligence in the case. The question concerning which the judge was giving instruction asked the jury whether the defendant wantonly, wilfully, and maliciously ran his automobile against the plaintiff's car, and the judge told the jury in effect that if the accident happened as the plaintiff claimed that it did the only conclusion to be drawn was that the defendant wilfully, intentionally, and maliciously committed the act. We have examined the evidence and are satisfied that this statement was entirely true. If the plaintiff's story was true, the defendant's act was necessarily deliberate and wilful.

2. The claim is made that the verdict is against the overwhelming weight of the evidence and that there was no evidence justifying the recovery of punitory damages. These contentions, as well as the contentions that prejudicial errors were made in the rulings on evidence and in certain parts of the charge other than those already referred to, must be overruled. It is not thought that these claims are sufficiently important or serious to require detailed treatment.

3. One Wochos, one of the jurors, when examined as to his qualifications to act as a juror in the case, stated that he had dealt with the plaintiff's firm, Dishmaker Bros., at various times, that he owed *Mr. Dishmaker* nothing at the time, that he owned no car, and that "he was not negotiating with *Mr. Dishmaker* for a car." Upon motion for new trial it appeared that Wochos had on January 2, 1913, ordered a Ford car of the plaintiff's firm, to be delivered on or about May 6th, for which he was then to give his notes for $625; that the trial began May 13th and closed by the bringing in of a sealed verdict May 16th; that the car had not been delivered at the time of the trial, but was delivered on May 16th, after the rendition of the verdict, and the purchase price paid in cash. The answers of the juror upon the *voir dire* seem to have been literally true. He might well have given fur-

ther information, but he stated nothing falsely. The trial court was satisfied that the juror was competent and fair and states that he was very desirous of being excused from serving on the case. We are unable to say that there was any error here.

4. After the jury had retired to deliberate they found themselves unable to decipher the word "punitive" in the last question of the special verdict. The questions were in the handwriting of the circuit judge, and the incident seems to show that he possessed, among the many other qualities of a learned lawyer which all concede to him, the quality of poor penmanship. In this dilemma the jury deputed their foreman to go into the court room and find out what the troublesome word might be. The foreman went up to the bench, another case being on trial, laid the paper before the judge, and asked the meaning of the word, to which the judge replied, "punitive, by way of punishment," and the foreman then returned to the jury room and announced to his fellow jurors that the word was "punitive." The proceedings in the court room were conducted in an ordinary tone of voice and were heard and taken down by the official reporter.

We see no prejudicial error here. No court has been more careful than this court in insisting that all communications between the court and the jury should be in the open court room and free from even a suspicion of secrecy (*Havenor v. State,* 125 Wis. 444, 104 N. W. 116; *Dralle v. Reedsburg,* 135 Wis. 293, 115 N. W. 819), but it seems that it would be little less than absurd to hold that because the trial judge correctly told a juryman what a given word in the special verdict was and what it meant there should be a new trial of the case. Such a holding would seem to be almost an affront to good sense.

5. It appears by affidavit of several jurymen that after the foreman's return there was discussion among them as to what would become of the punitive damages in case any were

awarded, the foreman and others contending that they would be paid to the county. It is not claimed that the foreman represented to his fellow jurymen that the judge had given him any instructions on the subject, but it is claimed that some at least of the jurymen believed that the foreman in taking this position was stating what the judge had told him and that they would not have awarded any punitive damages if they had known that such damages would go to the plaintiff.

Had the foreman represented that the judge had given him such instructions, the affidavits of jurymen might probably be competent evidence of that fact and of the effect which the supposed instructions had upon the deliberations of the jury (*Dralle v. Reedsburg, supra*), but in the absence of any representation of this kind such affidavits cannot logically be held admissible. Any such rule would place every verdict at the mercy of weak or corrupt jurymen. If verdicts were to be set aside because of the erroneous ideas of some of the jurymen as to its effect or because of fallacious or untrue arguments or statements made by one juryman to his fellow jurymen in the course of their deliberations, few verdicts would ripen into judgments. Such is not the law. *Wolfgram v. Schoepke,* 123 Wis. 19, 100 N. W. 1054; *Imperio v. State,* 153 Wis. 455, 141 N. W. 241.

*By the Court.*—Judgment affirmed.