WEGNER, Appellant, vs. CHICAGO & NORTH WESTERN RAILWAY COMPANY, Respondent.*

*October 8—November 5, 1952.*

* Motion for rehearing denied, with $25 costs, on January 6, 1953.

For the appellant there were briefs by *Schmitt, Eckhardt & Gullickson* of Merrill, and oral argument by *Leonard F. Schmitt.*

For the respondent there was a brief by *Quarles, Spence, & Quarles,* attorneys, and *Edward H. Borgelt, Richard S. Gibbs,* and *Norman C. Skogstad* of counsel, all of Milwaukee, and oral argument by *Mr. Skogstad.*

MARTIN, J.   Plaintiff raises the question: Should there be a new trial in a civil action where there are communications between the bailiff and the jury, as in this case, while the jury is deliberating on the verdict?

The original order for judgment on the verdict was entered March 20, 1951. On the following day plaintiff moved for a new trial on the basis of an alleged affidavit by Henry Kronenwetter, one of the bailiffs, to the effect that while the jury was deliberating he was called by the jury to request of the judge that some additional testimony be read to it; that he communicated the request to the judge and was instructed to inform the jury that it had all the evidence it needed; that he thus informed the jury. Another affidavit to the same effect was allegedly made by William Brown,

one of the jurors. In proceedings had before the trial court on April 4th it appeared from the statements of plaintiff's attorney that such affidavits had not been sworn to. The record shows that to be the fact. On April 6th the court granted the motion for a new trial on the basis of such alleged affidavits.

On April 7th the affidavit of Ana Egdahl was filed, stating that she was one of the bailiffs in the case; that she communicated to the judge in his chambers, in the presence of Kronenwetter, the jury's request for testimony or an exhibit; that the judge told her "they have all the evidence presented in the case and that they must settle it with what they have;" that she returned to the juryroom and gave the message to the jury; that the communication was oral and was not in the presence of the parties or their representatives.

In an affidavit filed April 10th Kronenwetter, in effect, refused to verify his former alleged affidavit, stating that he was not certain as to the events recited therein. The affidavit of the jury forelady, Adeline Bretzke, was also filed stating that she was requested by the jury that the court reporter come to the juryroom and read the transcript of testimony given by Dr. Karl Stahmer and of a witness who was not present at the trial (apparently that of Amos Barron); that she wrote the request on a paper and gave it to the bailiff, who returned and said the jurors had all the necessary material.

On April 20, 1951, defendant moved for a rehearing on the order granting a new trial and for judgment notwithstanding the alleged communications. On June 6, 1951, plaintiff moved to amend the order for a new trial and on June 13th the deposition of Mrs. Charles Bretzke, taken at the instance of the plaintiff, was filed with the court. Mrs. Bretzke testified that, as forelady of the jury, she requested Mr. Kronenwetter to have the testimony of Mr. Barron and Dr. Stahmer reread to the jury; that shortly thereafter

Kronenwetter came back to the juryroom and said that the jury had all the material necessary; that she never saw the bailiff, Ana Egdahl, at any time during the deliberations.

It is conceded that all these affidavits refer to but the one communication, although it is not certain which bailiff was involved. It is clear, however, that the jury wanted certain testimony reread to it and that the judge, through a bailiff, informed the jury that it had all the information it needed. The trial court so found.

Considering all the facts regarding the communication in the light most favorable to plaintiff, we can see no prejudicial error. In *Wiedenhaupt v. Hoelzel* (1948), 254 Wis. 39, 35 N. W. (2d) 207, relied upon by plaintiff, the jury, after retiring, desired further instructions and its request was telephoned by the court reporter to the trial judge at his home. The message from the judge to the jury, as stated by the reporter, was as follows (p. 40) :

"Tell them they should just answer each question and the court later on will take care of that. Go through the questions. The result will be something determined by the court and not by the jury. Answer each question according to the evidence."

The facts of that case are not similar to this. There the jury desired further instructions. Here it wanted rereading of some of the evidence, all of which it had heard on the trial. There the judge's reply that "The court later on will take care of that," and "The result will be something determined by the court and not by the jury," not only tended to minimize the importance of the work to be done by the jury, but intimated that the court would take care of the jury's request later on. Here, however, the judge's reply that the jury had all the material it needed was no more than a refusal to communicate, a refusal to grant its request. It would have

been an idle gesture to call the jury into the courtroom to advise that its request was denied.

The second question raised by plaintiff is whether the trial court had jurisdiction to review its order for a new trial and order judgment on the verdict.

It appears that notice of entry of the order granting a new trial was served on defendant's attorneys on April 10, 1951; the sixty days provided by sec. 252.10 (1), Stats., expired on June 10, 1951. The term of circuit court in Marathon county expired on May 14, 1951, and the sixty days from the end of such term expired July 13, 1951. On April 18th defendant served its notice of motion to vacate the order for a new trial. On the same date the court extended for thirty days the time for hearing motions after verdict. The time was again extended for thirty days on May 17th. On June 6th plaintiff moved to amend the order for a new trial. The time for motions was again extended on June 15th. July 15th being a Sunday, the court had an additional day to extend the time, but it was not until July 17th that the order was made extending the time for another thirty days.

On July 17th the court had lost jurisdiction to hear and decide motions after verdict. See *Beck v. Wallmow* (1938), 226 Wis. 652, 277 N. W. 705; *State ex rel. Gaudynski v. Pruss* (1940), 233 Wis. 600, 290 N. W. 289; *Boyle v. Larzelere* (1944), 245 Wis. 152, 13 N. W. (2d) 528.

It will be necessary to withdraw what was said in *Barrock v. Barrock* (1950), 257 Wis. 565, 569, 44 N. W. (2d) 527:

"In the instant case the plaintiff, within sixty days, moved the court to modify the judgment, and pursuant thereto the court held hearings within the sixty-day period, at which time defendant also made oral motion for review. No one objected to the jurisdiction of the court. By seeking modification of the judgment plaintiff invoked the continuing jurisdiction of the court."

The trial court, in its decision in that case, said:

". . . in a larger sense this court feels itself impelled to treat it [the motion] as an application to reopen on the ground of mistake."

The ultimate conclusion in the *Barrock Case* was right. The court would have reached that conclusion, not for the reason that both sides urged the continuing jurisdiction of the court, but for the reason that the court had discretion to open the matter on the grounds of mistake within the one-year period provided by sec. 269.46 (1), Stats., which reads:

"The court may, upon notice and just terms, at any time within one year after notice thereof, relieve a party from a judgment, order, stipulation, or other proceeding against him obtained, through his mistake, inadvertence, surprise, or excusable neglect and may supply an omission in any proceeding."

Although the trial court in this case lost jurisdiction to hear and consider motions after verdict, it had not, however, lost jurisdiction to enter judgment, and this it did on September 27, 1951.

Defendant has filed a motion for review of the trial court's denial of its motion for a directed verdict. The record clearly shows that a jury question was presented by the evidence. Plaintiff testified that in alighting from the coach he stepped on some object on the step, that he lost his balance, his left foot flew out from under him, and he fell. He did not see the object, but stated that there was no light over the steps and the light in the vestibule was behind him.

Walter Riedl, a police officer who investigated the steps of the coach immediately after plaintiff was taken away in the ambulance, testified that the lighting around the steps was very dim. He also stated that he saw Ford, one of the trainmen, pick up a fuseplug from the station platform about two

and a half feet away from the bottom step. Ford gave the plug to Riedl and it was offered in evidence on the trial.

Ida Hoffman testified that she saw the plaintiff fall; that it was dark on the steps; that just before plaintiff fell she saw him silhouetted against a light behind him but she could not see a light in front of him. Mrs. Millie Keene testified that the lights in the area above the steps were rather dim, much dimmer than the lights inside the coach.

The record shows that plaintiff testified falsely on a number of occasions, but his credibility was for the jury. He stated that with the exception of the amputation of several fingers and operations for appendicitis and hernia, his health had been perfect before the accident. It was shown, however, that in 1949 he was compensated by an award of the industrial commission for a twenty per cent permanent partial disability of the right leg suffered as the result of an injury received in June of 1946. He testified that he had never had any falls before the accident; but it was brought out that in May of 1947 he fell on the steps of his home receiving injuries for which he filed a claim on an accident policy of the Old Line Life Insurance Company of Milwaukee. He gave testimony before the industrial commission that he had been in the marine corps for two and one-half years, but it was shown that he had spent six weeks in service and had been discharged because of hammertoes. He testified upon this trial that he had spent two years at the University of Minnesota studying chemistry and bacteriology, but upon cross-examination he admitted that he had never enrolled at the university.

The truth would have served plaintiff better. In fact, in the argument before this court his counsel stated that plaintiff was a pathological liar. This may be, as it was evident from the verdict that the jury did not believe him in any instance except where his testimony was corroborated by other witnesses.

Defendant would have us invoke equity to deny plaintiff a new trial because he must come into court with clean hands. However, the credibility of the plaintiff is a matter for the jury. Defendant cites no cases to sustain its position. On the other hand, we find numerous authorities to the effect that perjury, if it was such, is a matter to be considered by the jury.

In its argument on the motion to review defendant contends that if plaintiff's fall was caused by the fuseplug on the steps, the defendant must have actual or constructive notice of the presence of the object. We could agree with this if the testimony in the record did not raise the question of the adequacy of the lighting. Such evidence was for the consideration of the jury in connection with the fact that the brakeman and the plaintiff failed to see the object.

Plaintiff contends that question 4 of the special verdict:

"Was the defendant railway company negligent in respect to providing a reasonably safe place for the plaintiff to alight from a train at Wausau, Wisconsin?"

did not present to the jury the issue of lighting that was raised by the evidence. Question 4 was answered "Yes."

"Question 5. . . . Was such negligence a natural cause of the plaintiff's fall and the resulting injuries and damages?"

was answered "No" by the jury.

Plaintiff contends that the language of question 4 suggested that the jury was to consider the question of lighting as to the platform only, and that it was given no opportunity to decide whether poor lighting of the vestibule and steps was a cause of plaintiff's fall.

In our opinion the language of question 4, "a reasonably safe place for the plaintiff to alight from the train," allowed the jury to consider the lighting on the vestibule and steps as well as on the platform. The question as submitted was

proper, and since the jury answered it in plaintiff's favor, he cannot complain.

It is not claimed by plaintiff that the evidence does not support the verdict, and the record discloses ample evidence upon which the jury could conclude that the fall was caused by plaintiff's physical condition rather than defendant's negligence.

In June of 1946 plaintiff was injured when a lever on a truck struck him in the lower right side. Thereafter he suffered a weakness and numbness in the right leg which bothered him in climbing stairs or turning sharply to the right. He saw several doctors about his condition and in April of 1947 underwent surgery for a hernia at the site of the injury, but the condition of the right leg did not improve.

In 1948 he consulted Dr. Herbert Powers to whom he complained that the right leg gave out when he climbed stairs and that he could not drive a car because he was never sure that he could raise his leg to apply the brakes. Dr. Powers' diagnosis was that plaintiff had suffered an impairment of the neuromuscular control of the right leg caused by injury to the femoral nerve, and concluded that there was a twenty per cent permanent partial disability. He stated that such an impairment interferes with walking and causes stumbling.

Dr. R. H. Quade also examined plaintiff late in 1948 on Wegner's complaint that his right leg was numb when he climbed stairs or rode in a car and that he was unable to step up on a curb because he tended to fall on his face. The doctor testified that "on making a sudden turn to the right he had an apparent tendency to fall in that direction," a tendency which was demonstrated during the doctor's examination.

At the 1949 hearing before the industrial commission plaintiff testified that he experienced the numb sensation in his right leg several times a day, especially when stepping up or turning sharply to the right.

Upon such evidence, together with the testimony of plaintiff that in leaving the coach on the night of the accident he had to turn right onto the vestibule and had to turn right to get where the first step was—although he stated that the leg did not bother him then—the jury could well have found that it was the condition of plaintiff's right leg that caused him to fall rather than the negligence of the defendant in providing a safe place for him to alight from the train.

We have discussed above defendant's motion for review of the trial court's refusal to grant the motion for a directed verdict, the testimony presenting a jury question, and our conclusion that the motion was properly denied.

It is necessary, however, to set aside the order of April 6, 1951, since it granted a new trial on the basis of the alleged affidavits which were later repudiated and, as stated above, the alleged communications do not require a new trial.

Sec. 274.12 (2), Stats., provides:

"A respondent may without serving notice of review mentioned in subsection (1), have a review of any error, the correction of which would merely support the judgment or order appealed from."

Upon the entire record we must conclude that the case was fully and fairly tried in the lower court, the evidence presented issues for the jury, and the verdict was amply supported by the evidence. Defendant is therefore entitled to judgment on the verdict, dismissing plaintiff's complaint.

*By the Court.*—Judgment affirmed.

GEHL, J. (*dissenting*). As recently as in June of this year we said in *State v. Cotter,* ante, pp. 168, 171, 54 N. W. (2d) 43, with respect to unauthorized communications to a jury not made in open court, quoting from *Havenor v. State,* 125 Wis. 444, 446, 104 N. W. 116, the following:

"The result of the adjudications on this subject is to the effect that all proceedings in a case should be open and public

and in the presence of the parties, whenever practicable, so as to afford them all reasonable opportunity to participate in the proceedings, and, if they are dissatisfied, to take such exception as the law allows. The due observance of this rule has led to a disapproval by the courts of any act by the judge, counsel, party, or stranger whereby communication is had with the jury after the case is submitted to them and they have retired for deliberation on their verdict, except it be in open court and with a due regard to the rights and privileges of the parties. Whenever such communications were had, though they were not prompted by improper motives, and though they may not have influenced the jury in arriving at their verdict, still they are generally treated as in themselves sufficient ground for setting aside the verdict rendered, for the reason that no party should be subjected to the burden of an inquiry before the court, regardless of whether or not its conduct in this respect, or that of its officers or that of the opposing party, has tended to his injury."

And we added, in response to the contention of the state that the trial court in that case did not err in denying a new trial because no prejudice to the defendant had been shown, that, page 172, "the cases cited above hold that a defeated party is not required to show prejudice." What we said in that case is not dictum. A new trial was granted upon the sole ground that there had been an unauthorized communication with the jury although no prejudice had been shown. It is obvious, therefore, that what we said in the *Cotter Case* was said deliberately and after due and full consideration.

True, the *Cotter Case* was a criminal action, but we found support for our conclusion in *Wiedenhaupt v. Hoelzel,* 254 Wis. 39, 35 N. W. (2d) 207, a civil action, decided as recently as in December of 1948, where we said (p. 41) :

". . . it is the well-settled rule in this state that all proceedings in a case shall be open and public; that any communication with the jury, after the case is submitted to them and they have retired for deliberation on their verdict, by any person, shall be in open court, and in the presence of the

parties or their representatives, where practicable. The rule is strict and any deviation from the rule has generally been treated as sufficient ground for setting aside the verdict, even though, as here, the communication was not prompted by improper motives and even though it has not influenced the jury in arriving at their verdict. A defeated party should not be required to show that a communication not made in open court was in fact prejudicial."

Nor is what we said in the latter case dictum. The unauthorized communication was there also held to require a new trial.

Thus it appears that it has been firmly established by this court that an unauthorized communication with the jury, no matter by whom made, requires a new trial without the necessity that the party complaining show that such communication was in fact prejudicial.

I cannot agree that we should recede from the statement of a rule so recently declared; not because of pride of authorship, but because I consider that the previous rulings are correct.

The majority now says that to warrant a new trial prejudice to the person complaining must be shown and that because the plaintiff failed in that regard he is not entitled to a new trial.

Difficult as the task may be, the courts should be eager to give stability and certainty to the law. They are essential to justice. *Lonstorf v. Lonstorf,* 118 Wis. 159, 95 N. W. 961. Judicial declarations are made for the guidance of the government and individuals. Both have the right to rely on announcements of the courts and to assume that a decision once made is a statement of the law and that it shall continue to exist as the law, at least until regularly amended or modified or until the court frankly expresses its purpose to recede from an earlier conclusion.

The majority does not withdraw what it said in the cases here cited. Rather it seeks to distinguish them from the one which we have before us upon a factual basis. Such distinction may not be attempted. We did not say in the earlier cases that the facts there appearing disclosed that the party complaining had been prejudiced by the unauthorized communication and that he was therefore entitled to a new trial. We said that in all cases where it appears that there has been an unauthorized communication with the jury, regardless of whether or not it appears that the communication tends to the injury of a party, that party may have a new trial.

The majority says that the trial judge's communication to the jury carried to it by one of the bailiffs was in fact a refusal to communicate. It was no more than a refusal by the judge to communicate *personally* with the jury. There was unauthorized communication—that is conceded by all parties. Should we say that in the absence of a showing of prejudice a new trial must be granted only when the trial judge personally conducts an unauthorized communication with the jury? I think not. If we were required to distinguish upon that ground I should prefer to assume that the act of the trial judge would probably be less harmful than that of a bailiff.

It is true that the record does not disclose that the bailiff said anything to the jury to influence them in their deliberation. Assuming, however, that he did not, I do not believe that it would encourage the confidence in the courts which it is necessary to maintain to open the door to even the possibility that a jury might in any way be affected or influenced by matters or conduct unauthorized by the rules of proper procedure.

"All court proceedings should be in the open; there should be no opportunity for the doing of things in a corner, . . ." *Hurst v. Webster Mfg. Co.* 128 Wis. 342, 347, 107 N. W. 666.

416

I am of the opinion that a new trial should be granted because of the fact that it appears without dispute that there was an unauthorized communication with the jury.

I am authorized to state that Mr. Justice BROADFOOT and Mr. Justice BROWN join in this dissent.