STATE of Wisconsin, Plaintiff-Respondent,

v.

Samuel BURTON, Jr., Defendant-Appellant-Petitioner.†

Supreme Court

*No. 81–2279–CR. Argued April 28, 1983.—Decided June 1, 1983.*

(Also reported in 334 N.W.2d 263.)

† Motion for reconsideration denied, without costs, on August 9, 1983. CECI and BABLITCH, JJ., took no part.

For the petitioner there were briefs and oral argument by *Margaret A. Maroney,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Kirbie Knutson,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed September 21, 1982, affirming a judgment of conviction and order denying a motion for a new trial of the circuit court for Milwaukee county, Robert W. Landry, Circuit Judge. The issue raised on review is whether the circuit court judge's entries into the jury room and comments to the jury outside the presence of the defendant and defense counsel constitute grounds for a new trial in this case. We conclude that the circuit court judge's actions constitute constitutional error, but the error in this case was harmless beyond a reasonable doubt. We therefore affirm the decision of the court of appeals.

## I.

Defendant Burton was charged with one count of delivery of a controlled substance (cocaine), contrary to secs. 161.41(1)(b) and 161.16(4), Stats. 1979–80. The complaint, issued six months after the alleged offense occurred, recites that the defendant delivered the cocaine to an undercover police officer on July 15, 1980. The defendant's identity was the sole contested issue at the jury trial. The defendant testified that he had not committed the crime charged, that he had never seen the testifying officer, and that he could not remember where he was on July 15, 1980.

The jury began its deliberations at 12:30 p.m. on April 23, 1981, and reached a verdict that evening, although the record does not indicate what time the verdict was reached. The jury announced its verdict of guilty in open court the following morning.

Appellate counsel filed a postconviction motion requesting a new trial on the grounds that the circuit court judge's communications to the jury during its deliberations constituted reversible error.

While the jury was deliberating, the circuit court judge, taking a court reporter with him, entered the jury room twice, once at 4:27 p.m. and again at 4:55 p.m. On both occasions the circuit court judge briefly spoke to the jury; his comments are part of the record. Neither the defendant nor defense counsel nor the state's attorney was present on either occasion, even though all were available. The defendant was in custody, and defense counsel, as instructed by the circuit court judge, had left information with the court clerk to enable the judge to contact him.

The first time the circuit court judge entered the jury room he said that he had "stopped in to check with" the jury and he noted on the record that the attorneys were not present. He explained that the deputy, having spoken with the jury about seven minutes earlier, had advised him that "you have not been able to arrive at a unanimous verdict not withstanding the fact that the case was submitted to you at about 12:30." The circuit court judge stated that he was advising the jury "so that you can let the bailiffs know who you want to contact that I will entertain your verdict at any time that you have reached a verdict; and in the event that you have not reached a verdict by 10:00 o'clock, I'll determine whether or not you will be put in a hotel for tonight or whether you will be released to come back tomorrow morning at 8:30." The circuit court judge also informed the jury that if it had "any messages that you want to pass onto the bailiff" so that family could be notified, "why, feel free to do so because we want nobody at home worrying about you." The circuit court judge concluded his brief communication saying: "I ask you to do your best, to go over all of the evidence that was presented to you and consider that in the light of the Court's instructions; and I wish you well."

The circuit court judge re-entered the jury room at 4:55 p.m., stating, "Folks, I don't suppose you have any

news for me." He then stated that the court would take a sealed verdict if the jury arrived at a verdict before 10:00 p.m. He explained that the verdict could be put in a sealed envelope, the jury would be excused until the morning, and the jury was not to discuss the case with anybody until it returned to the court. The circuit court judge further explained that in the event the jury did not reach a verdict by 10 o'clock that night, the jury would be excused at that time to return the next morning at 8:30 to continue deliberations and he would admonish the jury not to discuss the case with anybody. The circuit court judge then stated that he was trying "to make some decent arrangements for dinner." The judge stated, "Unfortunately, we can't provide dinner here because there are other juries who are deliberating," and there was not enough room at the court. He said that he "had not anticipated that you would run into this long deliberation, but please take as much time as you believe is necessary to spend on the matter, and we'll arrange for you to go to some dinner place. I think McDonald's is just down the street." A juror asked whether there was any particular time that they could have the bailiffs call their homes, and the circuit court judge responded that if the jurors made up their minds that they would "not be able to reach a verdict soon enough to break into dinner," they should let the bailiffs know and the bailiffs would make the calls while the jury continued with deliberations.

The circuit court, viewing its remarks as "purely of logistics of securing a place for the jury to deliberate into the evening and also to determine whether or not a meal should be served for them," denied the motion for a new trial. On appeal the court of appeals concluded that the judge's comments were not coercive or prejudicial and that the circuit court had not abused its discretion in denying the defendant's motion for a new trial.

The state and defendant agree that this judge's comments to the jury in the jury room outside the presence

of defendant and defense counsel constitute constitutional error. Wis. Const. art. I, sec. 7; U.S. Const. amends. VI, XIV. A criminal defendant is entitled to be present at his trial and to have counsel at every stage where he needs aid in dealing with legal problems. *Rogers v. United States,* 422 U.S. 35, 38 (1975); *Spencer v. State,* 85 Wis. 2d 565, 570, 271 N.W.2d 25 (1978); *State v. Mills,* 107 Wis.2d 368, 370, 320 N.W.2d 38 (Ct. App. 1982). The court's comments to the deliberating jury without the defendant and his counsel being present (unless the defendant has waived that right) deny the defendant his constitutional right to be present at trial.

The contested issue on appeal is whether the constitutional error here mandates a new trial. The defendant argues that the judge's entries into the jury room and comments to the jury outside the presence of defendant and defense counsel in this case constitute automatic grounds for a new trial under the rule set forth in *Havenor v. State,* 125 Wis. 444, 104 N.W. 116 (1905). In the alternative, he argues that if the harmless error rule applies to this situation, the error was not harmless beyond a reasonable doubt.

The state argues that this court has abandoned the *Havenor* rule, that the error in this case does not automatically entitle the defendant to a new trial, and that the error was harmless beyond a reasonable doubt.

We agree with the state. We conclude that this court has abandoned the *Havenor* rule, and we therefore expressly overrule *Havenor v. State,* 125 Wis. 444, 104 N.W. 116 (1905), and cases adhering to it. While the circuit court judge's actions constituted constitutional error, the error does not automatically entitle the defendant to a new trial. After analyzing the error in this case in light of the entire trial, we conclude that the error in this case was harmless beyond a reasonable doubt.

## II.

In *Havenor v. State,* 125 Wis. 444, 446, 447, 104 N.W. 116 (1905), the trial judge went to the jury room during the jury's deliberations at the jury's request. The trial judge declined to answer the jurors' questions, pointing out that the instructions already given covered the subject about which they asked. This court, recognizing the desirability of open and public proceedings and in the presence of the parties, "so as to afford them all reasonable opportunity to participate in the proceedings, and, if they are dissatisfied, to take such exception as the law allows," expressed its strong disapproval of any act whereby "communication is had with the jury after the case is submitted to them and they have retired for deliberation on their verdict, except it be in open court and with a due regard to the rights and privileges of the parties." The *Havenor* court then concluded that it was constrained to hold that communication between the judge and jury after the jury had retired to deliberate upon the verdict was prejudicial as a matter of law and constituted reversible error without a showing of injury in fact. Were *Havenor* applicable, its rule would govern the instant case, because here, as in *Havenor,* the judge communicated with the jury in the jury room while the jury was deliberating and neither the defendant nor defense attorney was present.

Both the defendant and the state acknowledge that this court's development and use of the *Havenor* rule is difficult to track; the court has not consistently applied the rule. The court appears to have adhered to the *Havenor* rule diligently for a short time after its formulation, applying it in both civil and criminal cases. *Hurst v. Webster Mfg. Co.,* 128 Wis. 342, 347, 107 N.W. 666 (1906); *Du Cate v. Brighton,* 133 Wis. 628, 637, 114 N.W. 103 (1907). The court's opinions show, though,

that not all members of the court were entirely happy with the harsh results of an inflexible rule. *Du Cate v. Brighton, supra,* 133 Wis. at 637.

Soon after *Havenor,* the court narrowed its previous broad statement of the *Havenor* rule to the facts of the *Havenor* case, applying the rule of *per se* reversal only when the unauthorized communication occurred between the judge and the jury. Contacts between other persons and the jury constituted grounds for reversal only when the communication was prejudicial. *Sedlack v. State,* 141 Wis. 589, 592, 124 N.W. 510 (1910); *Oborn v. State,* 143 Wis. 249, 278, 126 N.W. 737 (1910); *Ketchum v. Chicago, St. P., M. & O. R. Co.,* 150 Wis. 211, 220, 136 N.W. 634 (1912).

After narrowing the *Havenor* rule to communications between the judge and jury, the court again had the opportunity to apply the rule to communication between the judge and jury. In *Dishmaker v. Heck,* 159 Wis. 572, 577, 150 N.W. 951 (1915), the jury foreman went into the courtroom to ask the judge to decipher a word in the handwritten special verdict questions. The judge replied, "Punitive, by way of punishment." Instead of automatically granting a new trial, as the *Havenor* rule dictated, this court examined the communications between the judge and jury for prejudice, and found that applying the automatic reversal rule would be "almost an affront to good sense." After *Dishmaker,* this court refused to apply the *Havenor* rule in two later cases and required that the communication be more than innocuous to constitute reversible error. *Hackbarth v. State,* 201 Wis. 3, 229 N.W. 83 (1930); *Leide v. State,* 226 Wis. 581, 584, 277 N.W. 175 (1938).

Although the court appeared to have abandoned the *Havenor* rule, it re-embraced the rule in *Wiedenhaupt v. Hoelzel,* 254 Wis. 39, 41–42, 35 N.W.2d 207 (1948), unconvincingly attempting to distinguish the *Dishmaker*

case. The conversation in *Dishmaker* took place in open court and was recorded by the reporter, thus complying with at least part of the *Havenor* rule requiring communication to be in open court. In *Wiedenhaupt*, on the other hand, the "communication" took place in the jury room. The bailiff was advised by the jury that it wanted further instructions and notified the court reporter, who went into the jury room, spoke to the jurors, and then called the judge. The judge gave a statement to the court reporter, who relayed it to the jurors. Neither counsel nor parties were present. After *Wiedenhaupt* the court also briefly applied the *Havenor* rule to communications between a sheriff and the jury. *Surma v. State,* 260 Wis. 510, 51 N.W.2d 47 (1952) ; *State v. Cotter,* 262 Wis. 168, 54 N.W.2d 43 (1952).

Apparently unconvinced by its distinction in *Wiedenhaupt,* though, the court abandoned the *Havenor* rule for good in 1952. In *Wegner v. Chicago N.W.R. Co.,* 262 Wis. 402, 55 N.W.2d 420 (1952), the bailiff reported to the jury that the trial judge refused the jury's request that additional testimony be read. The court found error but concluded that the error did not prejudice the complaining party. *Id.* at 406. Neither the *Wegner* case nor subsequent cases cite *Havenor* or apply its rule. Every case that we have found since the *Wegner* decision reflects this court's application of a harmless error test to communications between all persons and the jury where the communication is outside the presence of the parties and counsel. *Pollack v. Olson,* 20 Wis. 2d 394, 401, 122 N.W.2d 426 (1963) ; *Seitz v. Seitz,* 35 Wis. 2d 282, 305–06, 151 N.W.2d 86 (1967) ; *State v. White,* 53 Wis. 2d 549, 559–60, 193 N.W.2d 36 (1972) ; *State v. Stewart,* 56 Wis. 2d 278, 285, 201 N.W.2d 754 (1972) ; *State v. Dix,* 86 Wis. 2d 474, 494, 273 N.W.2d 250 (1978), cert denied 444 U.S. 898 (1979) ; *May v. State,* 97 Wis.2d 175, 184, 293 N.W.2d 478 (1980).

As the defendant points out, these recent cases can be distinguished from both *Havenor* and this case, but the tenor of those cases makes it clear to us that this court has effectively abandoned the automatic reversal rule set forth in the *Havenor* case. But this court has not, and does not now, abandon or retreat from our strong, consistently expressed disapproval of a judge's communicating with the jury after it has retired for deliberations, unless the communication is in open court and defendant and counsel for both the defendant and the state are present where the defendant has not waived the right to be present. *Havenor, supra,* 125 Wis. at 446.

While we do not question the good faith or the motives of a judge, like the one in this case, who communicates with the jury about supper and other matters relating to the jurors' physical comfort and well-being, we do not condone the practice of a judge entering the jury room or communicating with a jury outside of the presence of the defendant and of counsel for the defendant both and the state, even when the judge scrupulously takes a court reporter with him or her to the jury room to record the comments. The judge is a figure of authority and respect during the trial; his or her intrusions into the sanctity of jury deliberations may affect those deliberations. Even a transcript of the judge's communication cannot reveal a judge's facial expressions or tone of voice. Defense counsel and defendant must be present to have the opportunity to observe the judge's demeanor first-hand, to object to statements or request curative statements in the event that the communication may be improper in any way.

We continue to believe, as we said in *Havenor*, that communication between judge and jury outside the open courtroom and outside the presence of the defendant and defense counsel constitutes error, but we do not readopt

the *Havenor* rule that such error constitutes automatic grounds for reversal for the same reasons that this court earlier abandoned the rule. As this court discovered soon after announcing the rule, situations will inevitably arise in which the communication is so innocuous that it cannot be said that the error in any way influenced the jury's verdict. When these situations arose the court properly was unwilling to require that the defendant be granted a new trial. A new trial places a heavy burden on the criminal justice system, and a new trial should not be ordered if it is unnecessary to ensure the defendant a fair trial.

For the reasons set forth we overrule *Havenor* to the extent that it calls for automatic reversal and a new trial. We also overrule cases to the extent that they follow the *Havenor* rule. We hold that communication between a judge and a jury, while the jury is deliberating, outside the courtroom and outside the presence of the defendant and defense counsel constitutes constitutional error, if the defendant has not waived the constitutional right to be present. The court must consider whether the constitutional error is harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18 (1967). We therefore examine this record to see whether the state has proved that this error was harmless beyond a reasonable doubt.

### III.

The standard for determining whether constitutional error is harmless, as formulated in *Chapman v. California,* 386 U.S. 18, 24 (1967), requires the state to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained . . . [and] the court must be able to declare a belief that [the constitutional error] was harmless beyond a reasonable

doubt." We cannot assess the impact of the error in this case either by looking at the judge's communications in isolation as the defendant does or by looking at the evidence to determine whether it is sufficient to support the conviction.

The error in this case consists of the trial judge's entries into the jury room and comments to the jury outside the courtroom and outside the defendant's and defense counsel's presence. To assess the impact of this error, we must take into account the circumstances under which the judge made the erroneous communication and the substance of the judge's communication in light of the entire trial. We must inquire whether on the basis of the entire trial "there is a 'reasonable possibility' that the constitutional error 'might have contributed to the conviction.'" *State v. Billings,* 110 Wis. 2d 661, 668, 329 N.W.2d 192 (1983).

The circuit court judge entered the jury room under the following circumstances. He made two brief entries at 4:27 and 4:55 p.m., after the jury had deliberated nearly four hours and soon after the deputy had inquired about the status of the jury's deliberations. He entered with a court reporter. The defendant argues that these entries into the jury's domain disrupted the jury's deliberations, intruded into the jury's independent decision-making, and had a tendency to coerce or hurry the jury. We do not believe that these circumstances in themselves caused the jury to feel rushed. The judge's entries took place at the end of a normal workday for court personnel, and the substance of the comments mostly concerned dinner arrangements, a subject that would normally be discussed at the end of the day.

We also do not think that the substance of the judge's communications could reasonably be construed as suggesting to the jurors that they had deliberated too long or

that they were inconveniencing the court personnel, as the defendant argues. The comments did not relate to the substance of the case. The judge talked about the comfort of the jurors and the procedures for the jury working late: dinner, telephone calls home, sealed verdicts. Defendant recognizes this fact but argues that the judge's comments "you have not been able to" arrive at a verdict, "I had not anticipated that you would run into this long deliberation," and "Folks, I don't suppose you have any news for me," reasonably imply that the jury should have reached its verdict by that time or that it was taking too long. We disagree with the defendant. The judge integrated his comments into a general discussion that explained that he was advising the jurors so they would know that he would entertain their verdict at any time. He also let them know that if they did not reach their verdict by 10 p.m. provisions would be made to allow them to continue deliberations the next day and that the jurors should feel free to have the bailiff contact their families because "we want nobody at home worrying about you." The judge concluded by asking the jury to do its best and by wishing them well. The judge's comments concerning the jury's not having reached a verdict, although better left unsaid, cannot be taken out of the entire context of the communication.

Although, as the defendant suggests, it is possible that one or more of the judge's remarks could have been made in a sarcastic, impatient, or condescending tone, and the transcript does not reflect tone of voice or gestures, we think that when the judge's comments are considered in context the defendant's suggestions are not plausible. Read as a whole, the judge's comments indicate the judge's concern for the jury's convenience and comfort.

We cannot examine the circumstances under which the judge made his comments or the substance of the communications in isolation; we must examine them in light

of the entire trial. The trial lasted approximately one day. The only contested issue was the defendant's identity. The state produced two undercover officers as witnesses who positively identified the defendant. One participated in the cocaine transaction, the other observed the transaction.

The defendant's testimony was brief. The defendant denied that he delivered cocaine to the officer and that he had ever before seen any of the officers. On cross-examination, he testified that he could not remember where he was on the day and at the time of the alleged incident. Although there was limited trial testimony, the jury deliberated at some length before the judge entered the jury room. The defendant argues that the jury was obviously having difficulty reaching a verdict and may have abandoned or shortened its deliberation after the judge's comments. Although the record does not show how long the jury deliberated after the judge's second interruption, it appears that the jury had a lengthy evening session. The circuit court judge stated to the jury on the following morning that he understood that the jury had had a good session the night before.

Considering the circumstances under which the judge made the erroneous communications, the substance of the communications, and the entire trial, we conclude that we cannot say that there is a reasonable possibility in this case that the constitutional error might have contributed to the conviction. We therefore affirm the decision of the court of appeals.

*By the Court.*—Decision of the court of appeals affirmed.