STATE of Wisconsin, Plaintiff-Respondent,

v.

William KOLLER, Defendant-Appellant.†

Court of Appeals

*No. 99–3084–CR. Oral argument July 26, 2001.—Decided September 20, 2001.*

2001 WI App 253

(Also reported in 635 N.W.2d 838.)

† Petition to review denied 11-27-01.

259

On behalf of the defendant-appellant, the cause was submitted on the briefs of and oral argument by *Peter M. Koneazny*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Daniel J. O'Brien*, assistant attorney general, and *James E. Doyle*, attorney general. There was oral argument by *Daniel J. O'Brien*.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. LUNDSTEN, J. · William Koller appeals from judgments convicting him of five counts of first-degree sexual assault of a child and orders denying his postconviction motions for a new trial. He argues that he was denied effective assistance of counsel at three points: (1) when his trial counsel failed to properly

question prospective jurors during *voir dire;* (2) when his trial counsel failed to seek dismissal of multiplicitous charges; and (3) when his trial counsel failed to ask for acquittal and to comment on the State's burden of proof during closing arguments. We disagree and conclude that, in each instance, Koller has failed to show that he was prejudiced by allegedly deficient performance. Koller also contends that he is entitled to a new trial because, without notifying the parties, the trial court responded to a jury request during deliberations. We conclude that any error in this respect was harmless. We affirm the judgments and orders denying postconviction relief.

## I. Background

¶ 2. The State charged Koller with five counts of first-degree sexual assault of a child in violation of WIS. STAT. § 948.02(1) (1991–92).[1] Count 1 alleged that Koller had penis-to-vagina intercourse with Kelly W. The remaining four counts related to Koller's contact with Katherine D.: Count 2 alleged hand-to-breast contact,

---

[1] All references to the Wisconsin Statutes are to the 1991–92 version unless otherwise noted. While the assaults occurred in both 1991 and 1993, the language of the applicable portions of the child sexual assault statutes remained the same at both relevant times.

WISCONSIN STAT. § 948.02(1) states in relevant part, "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony."

WISCONSIN STAT. § 948.01(5) defines sexual contact as "any intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts. . . ."

WISCONSIN STAT. § 948.01(6) defines sexual intercourse as "vulvar penetration as well as cunnilingus, fellatio or anal

Count 3 alleged penis-to-vagina intercourse, Count 4 alleged mouth-to-vagina contact, and Count 5 alleged penis-to-vagina intercourse.

¶ 3. At trial, Kelly W. testified that in 1993, when she was eleven years old, she was at Koller's house. Kelly W. was a friend of Koller's daughter and had been asked to baby-sit a younger brother. Kelly W. said she was on the porch when Koller told her she had a phone call. When she entered the house, Koller pushed her down on the living room floor, removed her shorts and underwear, and forced his penis into her vagina.

¶ 4. Katherine D. testified that in 1991, when she was eight years old, Koller was at her house visiting her family. That night, Koller came into Katherine D.'s bedroom, unzipped her nightgown, and rubbed her bare chest. Later, in the living room, Koller pulled up her nightgown and pulled down her underwear, then touched her vagina with his hands, his mouth, and his penis. She testified that Koller put his penis into her vagina two separate times and put his mouth on her vagina for a couple of minutes.

¶ 5. The jury found Koller guilty of all five charges and Koller filed postconviction motions with the same claims he now pursues on appeal. The trial court denied the motions and this appeal followed.

intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening. . . ."

## II. Analysis

### A. Standards Applicable To Ineffective Assistance Of Counsel Claims

¶ 6. Three of Koller's claims involve the contention that he received ineffective assistance of counsel. We set forth here the generally applicable standards for such claims.

¶ 7. A defendant alleging ineffective assistance of counsel bears the burden of showing that his trial counsel's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990).

¶ 8. The function of a court assessing a claim of deficient performance is to determine whether counsel's performance was objectively reasonable. *See State v. Kimbrough*, 2001 WI App 138, ¶¶ 31–35, 246 Wis. 2d 648, 630 N.W.2d 752. In making this determination, the court may rely on reasoning which trial counsel overlooked or even disavowed. *See id.* at ¶¶ 24, 31. Courts "do not look to what would have been ideal, but rather to what amounts to reasonably effective representation." *State v. McMahon*, 186 Wis. 2d 68, 80, 519 N.W.2d 621 (Ct. App. 1994). Professionally competent assistance encompasses a "wide range" of behaviors. *Strickland*, 466 U.S. at 689. "Review of counsel's performance gives great deference to the attorney and every effort is made to avoid determinations of ineffectiveness based on hindsight." *Johnson*, 153 Wis. 2d at 127.

¶ 9. Showing prejudice means showing that counsel's alleged errors actually had some adverse effect

270

on the defense. *Strickland*, 466 U.S. at 693. The defendant must show the alleged deficient performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The defendant cannot meet this burden by simply showing that an error had some conceivable effect on the outcome. *Id.* at 693. Instead, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *State v. Moats*, 156 Wis. 2d 74, 101, 457 N.W.2d 299 (1990).

¶ 10. Whether trial counsel's actions constitute ineffective assistance presents a mixed question of fact and law. *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). We will not reverse the trial court's factual findings regarding counsel's actions unless those findings are clearly erroneous. *Id.* at 634. Whether trial counsel's performance was deficient, and whether that behavior prejudiced the defense, are questions of law we review *de novo*. *Id.*

## B. Voir Dire

¶ 11. Koller argues that he was denied effective assistance of counsel because his trial attorney failed to sufficiently question several prospective jurors about their personal experiences with sexual assault and sexual assault victims. Koller tacitly concedes that the record does not support a finding that any of the jurors who sat on his case were biased. He nonetheless asserts that his trial counsel's failure to properly pursue indications of possible bias during *voir dire* might have resulted in a biased juror escaping detection.

¶ 12. The well-established burden placed on Koller is to show both deficient performance and resulting prejudice. However, we need not decide whether Koller's counsel performed deficiently during *voir dire* because we conclude that Koller has failed to show prejudice. *See State v. Sanchez*, 201 Wis. 2d 219, 237–39, 548 N.W.2d 69 (1996).

¶ 13. Koller spends much time trying to persuade this court that his counsel performed deficiently during *voir dire*, but he does not attempt to show resulting prejudice. In that regard, Koller merely states "[i]t would be impossible to prove that [he] would have been acquitted but for his counsel's deficiency at jury selection." Koller apparently assumes that showing prejudice in this context means showing that a differently composed jury would have acquitted him. He seems to be saying that, because this is an impossible task, he should be relieved of his burden of showing prejudice.

¶ 14. Koller misperceives the issue. He was entitled to an unbiased jury, regardless of the outcome of his trial. *See State v. Brunette*, 220 Wis. 2d 431, 439, 583 N.W.2d 174 (Ct. App. 1998) ("The right to an impartial jury is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution as well as the principle of due process."). The prejudice issue here is whether his counsel's performance resulted in the seating of a biased juror, not whether a differently composed jury would have acquitted him. *See State v. Traylor*, 170 Wis. 2d 393, 400–01, 489 N.W.2d 626 (Ct. App. 1992); *see also State v. Lindell*, 2001 WI 108, ¶ 81, 245 Wis. 2d 689, 629 N.W.2d 223.

¶ 15. Accordingly, at the postconviction stage Koller needed to show that if his trial counsel had asked more or better questions, those questions would have

resulted in the discovery of bias on the part of at least one of the jurors who actually decided his case. He might have done this by calling suspect jurors as witnesses at his postconviction hearing and asking them the questions he now claims his trial counsel should have asked. There is nothing unusual about this sort of retroactive determination of juror bias. *E.g., State v. Delgado*, 223 Wis. 2d 270, 588 N.W.2d 1 (1999) (postconviction hearing conducted to determine whether juror who gave an erroneous answer during *voir dire* was actually biased). However, Koller made no such showing, and his assertion of possible juror bias is mere speculation. *See State v. Erickson*, 227 Wis. 2d 758, 774, 596 N.W.2d 749 (1999) (speculation is insufficient to satisfy the prejudice prong of *Strickland*).

¶ 16. Therefore, based on Koller's failure to show prejudice, we reject his claim that he was denied effective assistance of counsel during *voir dire.*

### C. Closing Argument

¶ 17. Koller argues that he was denied effective assistance of counsel during closing argument. He contends that his trial counsel deficiently failed to ask for acquittal and to emphasize the State's burden of proving the elements beyond a reasonable doubt. Koller also complains that his counsel suggested, in the following passage from closing argument, that Koller was guilty:

> Now, what I am addressing to you is that if in fact that happened as Katherine D[.] said, that it did not happen to the extent certainly that four separate violations took place at or about that same time in the living room, three of which would be approximately in the living room. One would have been [in] the bedroom, the touching while she was in bed.

¶ 18. The burden placed on Koller is to show that his counsel's performance during closing argument was deficient and that he suffered prejudice as a result. In this context, showing prejudice means showing that, but for counsel's challenged performance, there is a "reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

¶ 19. Once again, Koller exerts much energy attempting to show that trial counsel's performance was deficient, but expends little effort to show resulting prejudice. He does not analyze the strengths and weaknesses of the State's case or attempt to explain why a different closing argument might have produced different verdicts. His choice of approach is understandable. A review of the trial court record discloses that Koller's real problem was his own testimony and the credible testimony of two child witnesses. A closing argument stressing the State's burden and asking for acquittal would have made no difference.

¶ 20. Trial counsel's failure to stress the State's burden of proof did not leave the jury in the dark. The trial court instructed the jury on the State's burden of proof, and the prosecutor told the jury about the State's burden during his closing argument. We do not agree that trial counsel's failure to remind the jury of the State's burden of proof prejudiced Koller.

¶ 21. As for trial counsel's failure to expressly ask for acquittal and his apparent suggestion to the jurors that they need not find Koller guilty of all the charged crimes even if they believed he did something to Katherine D., we find it purely speculative that these actions had an adverse effect on the verdicts. We believe, instead, that powerful trial testimony overshadowed the arguments of the attorneys.

274

¶ 22. Both Kelly W. and Katherine D., friends of Koller's daughter, gave unequivocal and credible testimony that Koller assaulted them. There was no suggestion that either child had a motive to falsify a charge against Koller. Further, Koller took the stand, against the advice of his counsel, and gave testimony insulting to girls and women, including referring to females in general as "bitches" and asserting that women allege rape in order to get attention. He talked about mothers who cannot take care of their children with the result that men like him get accused of crimes. Koller told the jury that he keeps getting accused of things he did not do. In at least one part of his testimony, Koller even equivocated on the question of his own innocence. When asked on cross-examination about the incident with Kelly W., Koller testified, "I don't remember it because it didn't—a lot of times I meditate wondering what could have [] happened. And then I keep on thinking, no, I can't remember it because it didn't happen."

¶ 23. In light of the trial testimony, we are not convinced there is a reasonable probability that the result of the trial would have been different had trial counsel performed another way in closing argument. Koller has not met his burden of showing that he was prejudiced by his counsel's performance during closing argument.

### D. Multiplicity

¶ 24. Koller asserts that his right to be free from double jeopardy was violated because he received multiple punishments for three of his sexual assault convictions when the facts show these three assaults com-

prised just one, or at most two, continuous crimes. More specifically, Koller first asserts that Counts 3 and 5 should have comprised a single count because both involved the same act (penis-to-vagina intercourse) and, so far as the trial testimony shows, these two contacts could have occurred in quick succession with no intervening event and no time for reflection. Koller separately argues that Counts 3, 4, and 5 should have comprised a single count because, although different types of acts were alleged (both penis-to-vagina and mouth-to-vagina), all three acts were so similar in nature and occurred so close in time that they comprised a "spontaneous succession" with no opportunity for reflection and no "new volitional departure."

¶ 25. Koller raises his challenges as direct claims of error and in the context of ineffective assistance of counsel. For reasons explained below, we find that Koller's claims were waived and are, therefore, appropriately addressed in the context of ineffective assistance of counsel.

¶ 26. Although Koller asserts that his trial counsel ineffectively failed to seek dismissal of multiplicitous counts "prior to trial," he does not analyze the allegations presented in the criminal complaint or at the preliminary hearing, and he makes no attempt to show that a challenge prior to trial would have been successful. The only arguments Koller develops on appeal are those relating to trial evidence and his complaint that his counsel failed to raise multiplicity objections at the close of the State's case. Accordingly, we only address whether Koller's trial counsel rendered ineffective assistance when he failed to raise multiplicity challenges at the close of the State's case. For reasons that will be evident, the result of this appeal

276

would not change if we were to address trial counsel's failure to raise pretrial challenges.

¶ 27. In order to properly address these claims, we must first determine as a general matter what a trial court should do when a defendant raises a new multiplicity challenge at trial based on the argument that the trial evidence is insufficient to support splitting a continuous course of conduct into multiple convictions. This determination will inform both our waiver analysis and our ineffective assistance analysis. In the following sections we conclude (1) that Koller's multiplicity claims were waived; (2) that the claims must, therefore, be assessed in the context of ineffective assistance of counsel; (3) that if Koller's counsel had raised a multiplicity challenge at the close of the State's case, the State would have had an opportunity to present additional evidence supporting multiple charging; and (4) that Koller has not met his burden of showing either deficient performance or resulting prejudice.

### 1. Multiplicity Challenges To Proof

¶ 28. Multiple punishments for the same offense violate the double jeopardy protections of the state and federal constitutions. *State v. Sauceda*, 168 Wis. 2d 486, 492, 485 N.W.2d 1 (1992). As our supreme court explained:

> Multiplicity (and therefore double jeopardy) is implicated only to the extent of preventing a court from imposing a greater penalty than the legislature intended. In other words, because double jeopardy protection prohibits double punishment for the "same offense," the focus of the inquiry is whether the "same offense" is actually being punished twice, or whether

the legislature indeed intended to establish separate offenses subjecting an offender to separate, although cumulative, punishments for the same act.

*State v. Derango,* 2000 WI 89, ¶ 28, 236 Wis. 2d 721, 613 N.W.2d 833 (citations omitted).

¶ 29. Wisconsin employs a two-part test for multiplicity:

The first part consists of an analysis under *Blockburger v. United States,* 284 U.S. 299, 304 (1932), to determine whether the offenses are identical in law and fact . . . The second part, which we reach if the offenses are not identical in law and fact, is an inquiry into legislative intent.

. . . If under the *Blockburger* test the offenses are different in law or fact, a presumption arises that the legislature intended to permit cumulative punishments for both offenses. This presumption can only be rebutted by clear legislative intent to the contrary.

*Id.* at ¶¶ 29–30 (citations omitted).

¶ 30. This appeal presents a "continuous offense" challenge, one in which multiple charges are "identical in law" because they are brought under the same statutory section. Koller's multiplicity challenge hinges on persuading this court that Counts 3, 4, and 5 were "identical in fact." Failing that, Koller does not attempt to overcome the presumption that the legislature intended to permit multiple punishments. Accordingly, we need only address whether Counts 3, 4, and 5 are "identical in fact."

¶ 31. The "identical in fact" inquiry under the first part of the multiplicity test involves a determination of whether the charged acts are "separated in time or are of a significantly different nature." *State v. Eisch,* 96

Wis. 2d 25, 31, 291 N.W.2d 800 (1980); *see also State v. Trawitzki*, 2001 WI 77, ¶ 28, 244 Wis. 2d 523, 628 N.W.2d 801. The "different nature" inquiry is not limited to an assessment of whether the acts are different types of acts. Rather, even the same types of acts are different in nature "if each requires 'a new volitional departure in the defendant's course of conduct.' " *State v. Anderson*, 219 Wis. 2d 739, 750, 580 N.W.2d 329 (1998) (quoting *Eisch*, 96 Wis. 2d at 36); *see also State v. Warren*, 229 Wis. 2d 172, 183, 599 N.W.2d 431 (Ct. App. 1999). Furthermore, time is an important factor, but even a brief time separating acts may be sufficient:

> That the interval is merely minutes or even seconds, as with the other elements and factors discussed, cannot be a solely determinative factor. The resolution of this factor is not solved by a stopwatch approach.

*Harrell v. State*, 88 Wis. 2d 546, 572, 277 N.W.2d 462 (Ct. App. 1979). The pertinent time question is whether the facts indicate the defendant had " 'sufficient time for reflection between the assaultive acts to again commit himself.' " *State v. Hirsch*, 140 Wis. 2d 468, 475, 410 N.W.2d 638 (Ct. App. 1987) (quoting *Harrell*, 88 Wis. 2d at 560).

¶ 32. Whether a multiplicity violation exists in a given case is a question of law that we review *de novo*. *State v. Reynolds*, 206 Wis. 2d 356, 363, 557 N.W.2d 821 (Ct. App. 1996).

¶ 33. Although multiplicity cases rarely differentiate the two, there is a difference between multiplicity challenges to charging and multiplicity challenges to proof. The prohibition against multiplicity in *charging* is prophylactic; it primarily protects defendants against

multiple punishments for a single crime. CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 3D § 142 at 17 (3d ed. 1999); *State v. Wright*, 948 P.2d 677, 683 (Kan. Ct. App. 1997). Some courts have also noted that improper multiple charging can work against defendants by leading juries to believe charged conduct is more serious than it is because it allegedly constitutes multiple crimes. *See, e.g., State v. Desirey*, 909 S.W.2d 20, 27 (Tenn. Crim. App. 1995); *see also* 4 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 19.3(c) at 776 (2d ed. 1999).

¶ 34. When a defendant complains prior to trial that criminal charges improperly split a single crime into multiple counts because the alleged factual basis does not show a "new volitional departure," the pertinent question is whether the State has alleged facts which, if proven, demonstrate a new volitional departure. However, just because the State has properly alleged facts for purposes of multiplicity analysis does not mean the State can prove the alleged facts. Thus, apart from whether there is a basis for a multiplicity challenge to pretrial allegations, events at trial, or otherwise may suggest that the State is unable to actually prove a new volitional departure supporting multiple charging.[2]

¶ 35. Koller complains that his trial counsel's failure to raise multiplicity challenges allowed the "legally and factually complex issue of multiplicity to go to the

---

[2] We recognize that the existence of a "new volitional departure" is not the full test under the "identical in fact" inquiry, but we think this term captures much of the essence of the test and we use it as shorthand for the full test.

jury." This argument is based on a misunderstanding of the roles of judge and jury with respect to multiplicity disputes. These disputes are resolved by trial judges, not juries. *See Anderson*, 219 Wis. 2d at 746 ("[w]hether an individual's constitutional right to be free from double jeopardy has been violated is a question of law"). Juries are not instructed on multiplicity issues and do not decide, even inferentially, whether charges are multiplicitous. There is no possibility that Koller's jury decided this "complex issue."

¶ 36. To underscore this point, we observe that the same evidence which is sufficient to support a jury finding of guilt on two charged counts might not also be sufficient to support multiple convictions under multiplicity analysis. The following hypothetical is illustrative. Suppose a husband is charged with four counts of battery for slapping his wife four times: Count 1 for the first slap, Count 2 for the second slap, and so forth. Suppose further that the wife testifies at trial that the husband slapped her each time as part of a continuous back and forth motion with his hand. For purposes of sufficiency of the evidence, each slap, and the attending circumstances, supplies sufficient evidence to support a conviction for each of the charged counts. However, multiplicity analysis is a different matter. Under these facts, a trial court might well determine the charges were multiplicitous and send only a single count to the jury.

¶ 37. Because multiplicity is not a jury matter, it follows that when a multiplicity challenge is raised during trial, including after the State has rested, the

trial court may allow the State to present additional evidence, normally without the jury present.[3]

¶ 38. These observations raise a question which we note, but do not resolve: What is the burden on the State when a defendant raises a multiplicity challenge directed at proof, rather than pretrial allegations? It can be argued that the State must meet the "beyond a reasonable doubt" standard when presenting evidence justifying multiple charges. On the other hand, the "preponderance of the evidence" standard is normally applicable when a defendant raises a constitutional challenge requiring a trial court to both find facts and resolve a legal question based on those facts. *See, e.g., State v. Rewolinski*, 159 Wis. 2d 1, 16 n.7, 464 N.W.2d 401 (1990) (State's burden at a suppression hearing is proof by a preponderance of the evidence); *State v. Lee*, 175 Wis. 2d 348, 362–64, 499 N.W.2d 250 (Ct. App. 1993) (State must prove waiver of *Miranda* rights was knowing and intelligent by a preponderance of the evidence). We need not resolve this question because, as shown below, regardless of the evidentiary burden placed on the State, Koller can do no more than speculate that the State could not have met its burden.

### 2. Waiver Of The Multiplicity Challenges

¶ 39. Koller first raised his multiplicity claims after trial. He contends that defendants can "challenge multiple punishment for the same offense at any point." It follows, in his view, that he did not waive his

---

[3] We observe that a trial court may receive the additional evidence in the presence of the jury if doing so preserves the rights of both parties. Frequently, evidence tending to show a "new volitional departure" is also admissible to prove the elements of the charged crimes.

challenges and that he is entitled to relief on appeal without showing ineffective assistance of counsel. The State, in contrast, asks us to find waiver because there was no objection *prior* to trial. The State asserts that there should be a waiver rule providing that all multiplicity challenges must be made prior to trial or be deemed waived. We disagree with both positions.

¶ 40. First, we reject the State's proposal that all multiplicity claims must be raised prior to trial pursuant to WIS. STAT. § 971.31(2), or be deemed waived.[4] Section 971.31(2) does not address objections based on events at trial. The only argument Koller seriously pursues on appeal is that the State failed to submit sufficient evidence *at trial* to support multiple punishments for his course of conduct. Where, as here, a development after the start of trial provides the basis for a new argument supporting a multiplicity challenge, that argument is not waived if omitted prior to trial. That being said, Koller's claims were nonetheless waived because they were also omitted prior to the time the case was submitted to the jury.

¶ 41. " 'No procedural principle is more familiar . . . than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make

---

[4] WISCONSIN STAT. § 971.31(2) (1993–94) reads:

Except as provided in sub. (5), defenses and objections based on defects in the institution of the proceedings, insufficiency of the complaint, information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived. The court may, however, entertain such motion at the trial, in which case the defendant waives any jeopardy that may have attached.

timely assertion of the right. . . .' " *Michel v. Louisiana*, 350 U.S. 91, 99 (1955), *reh'g denied*, 350 U.S. 955 (1956) (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)). Enforcement of the contemporaneous objection rule encourages parties to view the trial "as an event of significance that should be kept as error-free as possible." *State v. Davis*, 199 Wis. 2d 513, 518, 545 N.W.2d 244 (Ct. App. 1996) (citing *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)).

> The waiver rule exists to cultivate timely objections. Such objections promote both efficiency and fairness. By objecting, "both parties and courts have notice of the disputed issues as well as a fair opportunity to prepare and address them in a way that most efficiently uses judicial resources." If the waiver rule did not exist, a party could decline to object for strategic reasons and raise the error only when that party needed an advantage at some point in the trial. Similarly, judicial resources, not to mention the resources of the parties, are not best used to correct errors on appeal that could have been addressed during the trial.

*Erickson*, 227 Wis. 2d at 766 (citations omitted).

¶ 42. It could be argued that the State should be required to anticipate multiplicity challenges during trial and, even in the absence of such a challenge, present evidence showing that multiple charging is justified, or lose its opportunity to do so. We are not persuaded. Trials are not structured to resolve multiplicity disputes and, absent notice, the State should not be required to prove facts supporting multiple charges for purposes of multiplicity analysis. Given the subtlety of some multiplicity challenges, and the variety of possible challenges, it is unreasonable to impose upon the State the burden of anticipating all possible forms such challenges might take. *See, e.g., United States v.*

*Griffin,* 765 F.2d 677, 681 (7th Cir. 1985) (court imposed waiver to avoid creating an incentive for defendants to delay multiplicity challenges until after trial; court observed that a post-trial challenge to multiple charges involving two quantities of drugs, one in the defendant's pants pocket and one in his car, might deprive the state of an opportunity to show that the two packages contained drugs of a different purity).

¶ 43. During the trial in this case, the prosecutor's attention was directed at meeting his burden of proving all the elements of all the charged offenses. With respect to the counts at issue here, he met that burden by producing evidence of mouth-to-vagina contact and two separate instances of penis-to-vagina intercourse. There was no multiplicity challenge prior to or during trial and no reason for the prosecutor to anticipate that he needed to put on more evidence. It was incumbent on Koller to raise his claims before the end of trial so that the prosecution could have an opportunity to develop more facts while the witnesses were on hand and to enable the trial court to resolve the matter in an efficient and timely manner.

■■■

¶ 44. Accordingly, the reasoning behind the contemporaneous objection rule has full force here. We find that in situations like the one here, where a defendant claims that the state did not present enough evidentiary detail at trial to support splitting a course of conduct into multiple violations of the same statute, a multiplicity objection is waived if not raised prior to the time the case is submitted to the jury. Since Koller waived his claims, he may not obtain relief unless he shows that an omitted multiplicity objection constituted ineffective assistance of counsel. *See Erickson,* 227 Wis. 2d at 766 ("the normal procedure in criminal

cases is to address waiver within the rubric of the ineffective assistance of counsel").[5]

### 3. Ineffective Assistance With Respect To The Omission Of A Multiplicity Challenge To Counts 3 And 5

¶ 45. Koller argues that, at the close of the State's case, his trial counsel should have raised a multiplicity challenge to Counts 3 and 5 because both counts involved the same act (penis-to-vagina intercourse) and, so far as the trial testimony shows, these two contacts could have occurred in quick succession with no significant intervening time or event. His claim is directed at whether the acts constituting Counts 3 and 5 were different in "nature" within the meaning of cases such as *State v. Eisch*, 96 Wis. 2d 25, 291 N.W.2d 800 (1980), and *State v. Hirsch*, 140 Wis. 2d 468, 410 N.W.2d 638 (Ct. App. 1987).

---

[5] We stress that there are many different types of situations in which multiplicity issues arise, and we do not purport to set forth a general waiver rule covering all situations. At the same time, we note that this is not the first time we have found a double jeopardy claim waived. *E.g., State v. Reynolds*, 206 Wis. 2d 356, 361–62, 557 N.W.2d 821 (Ct. App. 1996) (failure to raise multiplicity claim resulted in treating the claim in the ineffective assistance context after trial); *State v. Patricia A.M.*, 168 Wis. 2d 724, 739, 484 N.W.2d 380 (Ct. App. 1992), *rev'd on other grounds,* 176 Wis. 2d 542, 500 N.W.2d 289 (1993) (multiplicity claim waived because it was not raised prior to appeal); *State v. Mink*, 146 Wis. 2d 1, 9–10, 429 N.W.2d 99 (Ct. App. 1988) (failure to seek dismissal on double jeopardy grounds before retrial after a mistrial was waiver); *cf. State v. McMahon*, 186 Wis. 2d 68, 79–80, 519 N.W.2d 621 (Ct. App. 1994) (duplicity claim waived because not raised and, therefore, issue analyzed in context of ineffective assistance).

¶ 46. The procedural chronology in which this claim arises is relevant to its proper resolution.

¶ 47. Prior to trial, there was no reasonable basis on which to rest a claim that Counts 3 and 5 were multiplicitous with respect to each other. The facts alleged in the criminal complaint and the testimony at the preliminary hearing plainly supported separate charges.

¶ 48. In the criminal complaint, Katherine D. is credited with asserting that Koller had penis-to-vagina intercourse with her in the living room (Count 3) and then mouth-to-vagina contact (Count 4) in the same room. Katherine D. was then allowed to go to the bathroom, but instead sought refuge in her mother's bedroom where she was unable to awaken her mother from a medication-induced state of sleep. Katherine D. said Koller then carried her back to the living room where penis-to-vagina intercourse occurred a second time (Count 5).

¶ 49. At the preliminary hearing, with less detail, but similar clarity, Katherine D. asserted that mouth-to-vagina contact occurred between the first and second penis-to-vagina intercourses:

Q Okay. Later that day, did you have contact again with the defendant you just identified?

A Yes.

Q And where did that take place?

A In the living room.

Q And did he do anything to you in the living room?

A Yeah.

287

Q What did he do?

A He pulled up my nightgown and pulled down my underpants and he unzipped the front of my nightgown and he stuck his penis in my vagina.

Q After he stuck his penis in your vagina, did he do anything else to you?

A Yeah. He put his mouth on it.

Q On what?

A My vagina.

Q After he put his mouth on your vagina, did he do anything else to you?

A Yeah. He again stuck his penis in my vagina.

¶ 50. Katherine D.'s trial testimony detailed the types of contact, but did not provide the sequence of Counts 3, 4, and 5. Instead of specifying that Koller had mouth-to-vagina contact with her between the two penis-to-vagina intercourses, Katherine D. only related that Koller put his penis into her vagina on "two separate occasions" and put his mouth on her vagina for a couple of minutes. Questions and answers relating to the sequence of the two instances of penis-to-vagina intercourse were limited to the following:

Q How many times that night did he put his penis into your vagina?

A Twice.

. . . .

Q The two times that he placed his penis into your
 vagina, did both of those take place in the living
 room?

A Yeah.

Q While you were on the couch?

A Yeah.

Q And he did it on two separate occasions?

A Yeah.

Neither attorney asked Katherine D. for more details,
and there was nothing in her trial testimony indicating
that any event or particular amount of time separated
the first penis-to-vagina intercourse from the second.

¶ 51. Koller complains that his trial counsel
should have seized on Katherine D.'s lack of specificity
at trial to assert, at the close of the State's case, a
multiplicity problem with Counts 3 and 5. He argues
that such a motion would have been successful because,
regardless of pretrial allegations, the trial evidence did
not support separate penis-to-vagina convictions. Kol-
ler further argues that the postconviction testimony
shows that his trial counsel did not have a valid
strategic reason for failing to raise this multiplicity
challenge.

¶ 52. For purposes of this decision, we will assume
that the trial testimony does not support two separate
charges for penis-to-vagina intercourse. Koller argues
that the absence of testimony showing the two vaginal
penetrations were separated by a significant event or
time provides no basis for a determination that he had
"sufficient time for reflection between the assaultive

289

acts to again commit himself." *Harrell*, 88 Wis. 2d at 560. On the other hand, an argument can be made that because Katherine D. was only eight years old and Koller was an adult, each penetration of Katherine D.'s vagina necessarily required significant effort and, therefore, a new volitional departure. We choose not to resolve these competing arguments and will instead assume, without deciding, that the trial testimony supported only a single count of penis-to-vagina intercourse.

¶ 53. We agree with Koller that the postconviction testimony of his trial counsel reveals no sound strategic reason for omitting a multiplicity challenge at the close of the State's case. However, regardless of counsel's subjective thought process, his omission was objectively reasonable.

¶ 54. The flaw in Koller's argument is his assumption that the trial court's assessment of multiplicity at the close of the State's case would have been based only on trial testimony up to that point in time. However, as shown above, the State was under no duty to persuade the *jury* that multiple charging was proper, and the presumed omission of trial testimony showing a new volitional departure was not by itself a problem. This was a matter for the trial court to address if and when it was raised. If a multiplicity challenge had been raised, the trial court could have permitted the State to present additional evidence on the topic.

¶ 55. Accordingly, in order to show that he was prejudiced by the omitted objection, Koller needed to show that the State would have been unable to present evidence satisfying the trial judge that the second penis-to-vagina penetration was a new volitional departure. Koller has not made the attempt, and any such effort would be highly speculative. *See Erickson*, 227

Wis. 2d at 774 (speculation is insufficient to satisfy the prejudice prong of *Strickland*). In light of Katherine D.'s pretrial statements, it appears the State could have easily met its burden.

¶ 56. We conclude that, at the close of the State's case, a reasonably competent defense counsel, mindful of the pretrial record, would have considered a multiplicity challenge to Counts 3 and 5 to be a waste of time. Thus, Koller has not shown deficient performance. Further, we conclude that Koller has not shown resulting prejudice because he has not demonstrated that such a challenge would have been successful.

### 4. Ineffective Assistance With Respect To The Omission Of A Multiplicity Challenge To Counts 3, 4, And 5

¶ 57. Koller separately argues that Counts 3, 4, and 5 should have comprised a single count because, although the three counts encompassed different types of acts (both penis-to-vagina and mouth-to-vagina), the trial testimony reveals only a single "spontaneous succession" comprised of acts so similar in nature and occurring so close in time that there was no opportunity for reflection and no "new volitional departure." He complains that his counsel's failure to raise this multiplicity challenge at the close of the State's case amounted to ineffective assistance of counsel.

¶ 58. This second multiplicity claim does not merit an extended discussion because, once again, it is based on the notion that an objection at the close of the State's case would have been assessed solely in light of previously received trial evidence. However, as the above sections of this decision demonstrate, the trial

court would not have been limited in that manner. Therefore, Koller's challenge to Counts 3, 4, and 5 fails because a reasonably competent defense counsel, in the shoes of Koller's attorney, could have determined that such a challenge was futile. Further, Koller has not demonstrated prejudice because he has not even attempted to show that his multiplicity challenge would have been successful if the State had been allowed to present additional evidence.

¶ 59. There is another reason Koller's second multiplicity challenge fails. This second claim is directed primarily at the relationship between Count 4 (mouth-to-vagina contact), on the one hand, and Counts 3 and 5 (penis-to-vagina intercourse), on the other. Koller asserts that evidence showing a switch from mouth-to-vagina contact to penis-to-vagina intercourse, without more, does not show a "new volitional departure." We disagree. When a perpetrator moves from having mouth-to-vagina contact to having penis-to-vagina intercourse, he necessarily engages in a new volitional act warranting a separate charge, conviction, and punishment.

¶ 60. Koller's contrary argument is based on the portion of *Hirsch*, where we concluded there was no "significant change in activity" when the defendant moved his hand from the child's "vagina to her anus and back again." *Hirsch*, 140 Wis. 2d at 474–75. However, while one might conceive a defendant continuously moving his hand from the outside of a child's vagina to the outside of her anus without a "new volitional departure," the same is not true of moving from mouth-to-vagina contact to penis-to-vagina intercourse. These acts are plainly different in nature and involve a new volitional departure, regardless how much time sepa-

rates the two. *Cf. Eisch*, 96 Wis. 2d at 27–28, 33 ("different nature" of oral sex and penis-to-vagina intercourse deemed to be the important factor in determining that the acts were properly charged in separate counts).

### E. Trial Court Communication With Jury

¶ 61. At Koller's trial, a nurse testified regarding a doctor's report of a pelvic examination of Katherine D., performed after the alleged assaults. The nurse was present during the doctor's examination and testified about her own observations and whether the results of the exam were consistent with a sexual assault. During deliberations, the jury sent a note to the court indicating that it wanted to see the doctor's report and a transcript of the nurse's testimony. Without notifying the parties of the request, the trial court responded to the jury through the bailiff that those items were "not available." Koller contends that the trial court's communication with the jury in his absence was constitutional error warranting a new trial.

¶ 62. Unless a defendant has waived his or her rights, a trial court's communication with a deliberating jury in the absence of the defendant and defendant's counsel violates the defendant's constitutional right to be present at trial and to have counsel at every stage where he or she needs aid in dealing with legal problems. *State v. Burton*, 112 Wis. 2d 560, 565, 334 N.W.2d 263 (1983). When a trial court commits this type of violation, the error is subject to harmless error analysis. *Id.* at 570–73; *State v. Bjerkaas*, 163 Wis. 2d 949, 957–58, 472 N.W.2d 615 (Ct. App. 1991). We examine the circumstances and substance of the communication

in light of the entire trial to determine whether the error was harmless. *See Bjerkaas*, 163 Wis. 2d at 957–58. An error is harmless if there is no reasonable possibility that the error affected the outcome of the trial. *Id.* at 958.

¶ 63. The State contends that no error occurred in this case because the trial court's response involved only a response on a point of law. In support, the State points to *May v. State*, 97 Wis. 2d 175, 181–87, 293 N.W.2d 478 (1980), and *State v. Clifton*, 150 Wis. 2d 673, 685–86, 443 N.W.2d 26 (Ct. App. 1989). While we agree that these cases suggest that a defendant's presence is not required when the trial court answers a jury's written question on a point of law, they do not resolve the issue and they do not provide clear guidance on the difference between a mere "point of law" and other jury questions involving legal issues.[6]

¶ 64. We doubt that both requests by the jury raised only a "point of law." However, rather than attempt to sort through the merits of the State's argument, we will assume for purposes of this decision that the trial court erred by responding to both questions without consulting with or doing so in the presence of Koller and his attorney. We will address, instead, the State's harmless error argument.[7]

---

[6] We note that in *Bjerkaas* the State conceded that a judge erred when he answered a jury's legal question regarding entrapment. *State v. Bjerkaas*, 163 Wis. 2d 949, 957, 472 N.W.2d 615 (Ct. App. 1991).

[7] Our comments here should not be read to detract from the " 'strong, consistently expressed disapproval of a judge's communicating with the jury after it has retired for deliberations, unless the communication is in open court.' " *McMahon*, 186 Wis. 2d at 87 (quoting *State v. Burton*, 112 Wis. 2d 560, 569, 334 N.W.2d 263 (1983)).

¶ 65. With respect to the trial court's denial of the request to see the doctor's report, there is no possible prejudice. The report itself was never presented to the jury as evidence during trial and never moved into evidence. Accordingly, the report was not evidence and it could not properly be sent to the jury for its consideration. *See State v. Eison*, 194 Wis. 2d 160, 175, 533 N.W.2d 738 (1995); *Johnson v. State*, 75 Wis. 2d 344, 363, 249 N.W.2d 593 (1977); *King v. State*, 75 Wis. 2d 26, 41–42, 248 N.W.2d 458 (1977).

¶ 66. It is evident that the jury's interest in the nurse's testimony was related to its interest in the doctor's report. By itself, the nurse's testimony was simple and brief. She told the jury that the report contained the doctor's conclusion that Katherine D.'s hymen was "not smooth" as would be expected with an eight-year-old child. The nurse also testified that Katherine D.'s condition was consistent with the reported assault. Because there was nothing complicated or difficult to remember about the nurse's testimony, we think it apparent that the jury's true interest was in the doctor's report, something it could not see.

¶ 67. Accordingly, assuming that the trial court erred when it communicated with the jury without consultation with or in the presence of Koller and his attorney, the error was harmless. There is no reason to think that the verdicts in this case would have been different if the jury had been able to review a transcript of the nurse's testimony during deliberations.[8]

---

[8] Judge Laurence C. Gram conducted pretrial proceedings, the trial, and a postconviction hearing. Judge Gram orally denied Koller's postconviction motion and Judge William D. Gardner issued a written order based on Judge Gram's oral

*By the Court.*—Judgments and orders affirmed.

ruling. Koller appealed, but in 2000 this court granted Koller's motion to remand for a supplemental postconviction proceeding on the issue of whether Judge Gram erred by communicating with the jury in the absence of defense counsel. On remand, Judge John J. DiMotto denied this supplemental postconviction motion.