STATE of Wisconsin, Plaintiff-Respondent,

v.

Julio C. BAUTISTA, Defendant-Appellant.†

Court of Appeals

*No. 2008AP1692–CR. Submitted on briefs March 5, 2009.
—Decided June 17, 2009.*

2009 WI App 100

(Also reported in 770 N.W.2d 744.)

† Petition to review denied 9/24/09.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jefren E. Olsen,* assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael C. Sanders,* assistant attorney general, and *J.B. Van Hollen,* attorney general.

Before Brown, C.J., Anderson, P.J., and Neubauer, J.
■

¶ 1. BROWN, C.J. In *State v. Hansen,* 2001 WI 53, 243 Wis. 2d 328, 627 N.W.2d 195, our supreme court addressed WIS. STAT. § 961.45 (2007–08),[1] providing for double jeopardy protection against successive prosecutions by dual sovereignties in the context of controlled substance offenses. The supreme court rejected the State's contention that, so long as the elements are different (the so-called *Blockburger*[2] test), dual prosecutions may proceed. *Hansen,* 243 Wis. 2d 328, ¶¶ 12, 44. Rather, the court announced that successive prosecutions may not exist when the "conduct" is the same. *Id.,* ¶ 44. In this case, Julio C. Bautista, relying on two

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[2] *Blockburger v. United States,* 284 U.S. 299 (1932).

cases from Pennsylvania, argues that conduct is defined as a "common scheme or plan" such that his conspiracy to sell drugs encompasses all acts under that planned endeavor. We are unwilling to accept that definition. Borrowing from a phrase in *Harrell v. State*, 88 Wis. 2d 546, 558, 277 N.W.2d 462 (Ct. App. 1979), we hold that when a defendant comes to a "fork in the road" and commits to a separate volitional act, it is different conduct and its prosecution is not subject to § 961.45. We affirm.

¶ 2.   Bautista was arrested on September 7, 2005, after delivering twenty ounces of cocaine to a federal undercover agent. On September 12, the State charged him with delivering cocaine on two occasions, one on August 13 and the other on September 7. On September 20, the U.S. attorney filed federal charges based on the same two deliveries. As a result, the State dismissed its case. But on November 21, the State charged Bautista with one count of conspiracy to deliver tetrahydrocannabinols (marijuana). The State alleged that this conspiracy ran from April 11, 1997, to September 6, 2005, and that the first significant arrest in this conspiracy occurred in March 2005.

¶ 3.   After Bautista was convicted in federal court for the two counts of delivering cocaine, he moved to dismiss the state charge on grounds that it was barred by WIS. STAT. § 961.45, because he had already been convicted of the same conduct in federal court. The circuit court denied the motion and Bautista then pled guilty. The circuit court imposed a bifurcated sentence and Bautista now appeals.

¶ 4.   Bautista relies heavily on *Hansen* as the cornerstone for his argument. In that case, on September 29, 1997, a state narcotics agent arrested Hanson after cocaine was found on her person, in her vehicle

(along with drug paraphernalia and cutting agents) and her home. *Hansen*, 243 Wis. 2d 328, ¶¶ 2–3. The State charged her with possessing cocaine with intent to deliver. *Id.*, ¶ 2. While the State action was pending, a federal grand jury indicted Hansen for conspiracy to distribute and possess with intent to distribute. *Id.*, ¶ 4. She decided to plead guilty to the federal charge. *Id.* At the plea hearing, the assistant U.S. attorney explained the factual basis for Hansen's plea. *Id.*, ¶ 5. He informed the court that the evidence which he would present at trial would include testimony from witnesses regarding Hansen's involvement with other individuals in the sale of cocaine. *Id.* Included as part of the factual basis was evidence of the cocaine found on her person, in her vehicle and at her apartment by the Wisconsin narcotics agent on September 29. *Id.* In particular, the factual basis included information about the amount of cocaine found, a number of scales commonly used for weighing cocaine which were found in the trunk of her vehicle, a shot gun and containers of various powdered chemicals sometimes used as cutting agents to dilute cocaine. *Id.*

¶ 5.   Hansen was convicted of the federal charge and sentenced while the state charge was still pending. *Id.*, ¶ 6. She then moved to dismiss the state charge. *Id.* She noted that WIS. STAT. § 961.45 bars a controlled substance prosecution in Wisconsin where the defendant has already been convicted for the "same act" under federal law or the laws of another state. *Id.* She argued that the state charge was for the same act as the federal charge for which she had been convicted. *See id.* The circuit court denied the motion on the grounds that § 961.45 required application of the "elements only" test of *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether the prior conviction was for the

same act. *Hansen*, 243 Wis. 2d 328, ¶ 6. Because the state charge required proof of different elements than the federal offense, the circuit court held that § 961.45 was inapplicable. *Hansen*, 243 Wis. 2d 328, ¶ 6. Hansen then pled guilty and appealed. *Id.*, ¶¶ 7–8. This court certified the case to the supreme court to decide if the *Blockburger* test was the proper analysis to use in assessing § 961.45 issues. *Hansen*, 243 Wis. 2d 328, ¶ 8. The supreme court accepted the certification.

¶ 6.  Before the supreme court, the State asserted that *Blockburger* should be the test. *Hansen*, 243 Wis. 2d 328, ¶ 12. But the supreme court rejected that argument. *Id.*, ¶ 44. In a thoughtful and lengthy discussion, the court reasoned that whether two crimes were the "same offense" (the *Blockburger* test) asked an altogether different question than whether a crime consisted of the "same act." *Hansen*, 243 Wis. 2d 328, ¶¶ 22–29. In analyzing the cases addressing double jeopardy prior to the enactment of the uniform law upon which Wis. Stat. § 961.45 was based, the supreme court found that the terms "act" and "same act" were consistently used to "describe the conduct comprising the offense." *Hansen*, 243 Wis. 2d 328, ¶¶ 27–30. Therefore, the supreme court concluded that if the same conduct comprised the charged offenses, in both sovereignties, the Wisconsin prosecution was barred once there was a conviction in the other sovereignty. *Id.*, ¶¶ 30, 44.

¶ 7.  Because Hansen's conduct consisted of possessing cocaine on September 29 in her home, in her car and on her person, and because this same conduct was the factual basis for both her federal conspiracy charge and her state possessing with intent to deliver charge, the supreme court held that the state prosecution was barred once the federal charge resulted in a conviction. *Id.*, ¶ 43.

586

¶ 8. Bautista sees parallels between *Hansen* and the facts in his case. He explains that Hansen was charged in state court with a very specific act—possession with intent—and in federal court with conspiracy—of which the state act was part. Thus, he continues, "both the acts underlying the state charges and the overt acts constituting the federal conspiracy can be seen as acts of criminal behavior committed in support of the common and continuing scheme of controlled substances distribution in which Hansen played a role." Similarly, his legal problems consisted of two specific charges in federal court—possession with intent to deliver cocaine—and in state court with broad ranging conduct—a conspiracy to sell marijuana—of which, he claims, the federal acts were part.

¶ 9. Bautista borrows from two Pennsylvania cases to support his theory that a conspiracy charge swallows up all specific acts performed in furtherance of the conspiracy. In *Commonwealth v. Abbott*, 466 A.2d 644 (Pa. Super. Ct. 1983), and *Commonwealth v. Mascaro*, 394 A.2d 998 (Pa. Super. Ct. 1978), the courts interpreted a "same conduct" phrase in a Pennsylvania statute barring dual prosecution to mean "any and all criminal behavior committed in support of a 'common and continuing scheme.' " *Abbott*, 466 A.2d at 651; *see also Mascaro*, 394 A.2d at 1001. He appears to argue that, even though the *Hansen* court never defined the term "same conduct" as meaning "all behavior in support of a common scheme," it is obvious to him that the only reasonable interpretation of *Hansen* is that compound charges consisting of a conspiracy in one court and its object offense in another, are barred by the statute. He appears to extrapolate from this that if a conspiracy involves multi-layered conduct, and all such

conduct is part of the overarching common scheme, then Wis. Stat. § 961.45 must be read to bar prosecution where some other part of the multi-layered conduct has resulted in a prosecution in some other jurisdiction.

¶ 10.   While Bautista gets points for a novel argument, at its core, it is fundamentally inconsistent with the very premise of the term "same conduct." The term "same conduct" is, after all, not exactly a rare term in criminal law, generally speaking. It is used in all kinds of contexts. For example, it is of continuing concern in sexual assault multiplicity/double jeopardy cases where the question is whether the defendant's assaultive conduct constituted a single offense or separate, distinct offenses. We cite to two cases where we discussed what conduct constitutes separate, distinct offenses—and specifically, how to determine if separate offenses are comprised of the same, or different, conduct.

¶ 11.   *Harrell*, 88 Wis. 2d 546, referred to at the top of our opinion, is one of the leading sexual assault multiplicity cases. There, the defendant committed two forcible vaginal intercourses on the same person, at the same location and separated by twenty-five minutes of conversation. *Id.* at 553. We held that the break in his conduct and the time between the acts was sufficient to constitute separate and distinct acts of rape, and thus the two-count charge was not multiplicitous. *Id.* at 564–66. In doing so, we wrote:

> If at the scene of the crime the defendant can be said to have realized that he [or she] had come to a *fork in the road,* and nevertheless decides to *invade a different interest,* then his [or her] successive intentions make him [or her] subject to cumulative punishment, and he [or she] must be treated as accepting that risk, whether he [or she] in fact knows of it or not.

*Id.* at 558 (emphasis added; citation omitted).

¶ 12. And we stated in *State v. Koller*, 2001 WI App 253, ¶ 31, 248 Wis. 2d 259, 635 N.W.2d 838, *modified by State v. Schaefer*, 2003 WI App 164 ¶ 52, 266 Wis. 2d 719, 668 N.W.2d 760:

> [Determining whether acts are sufficiently different in fact to warrant multiple charges] involves a determination of whether the charged acts are "separated in time or are of a significantly different nature." The "different nature" inquiry is not limited to an assessment of whether the acts are different types of acts . . . . The pertinent time question is whether the facts indicate the defendant had " 'sufficient time for reflection between the . . . acts to again commit himself [or herself].' " (Citations omitted.)

¶ 13. So, in *Hansen*, the conduct which comprised the state possession with intent to deliver charge "mirrored" the conduct for which she was previously convicted in federal court. *Hansen*, 243 Wis. 2d 328, ¶ 43. Indeed, the conduct relied upon by the federal prosecutor was "the sole basis for the conviction in state court." *Id.* The charged offenses were both based on the September 29, 1997 possession. The conduct constituting the charged offenses was not separated in time or different in nature. Instead, the conduct comprising both offenses was based on one commitment or volitional intention—to deliver cocaine to others.

¶ 14. However, in Bautista's case, he sold cocaine on one date, August 13, 2005.[3] This act resulted in a federal charge to which he pled guilty. The state charge had nothing to do with delivering cocaine on a certain date. Instead, it had everything to do with a different

---

[3] While Bautista again sold cocaine on another day, September 7, 2005, this act was outside the time frame stated in the state complaint, and thus, would be no bar.

kind of drug—marijuana—and it alleged a conspiracy with others to sell this particular kind of drug between April 11, 1997, and September 6, 2005, a span of over eight years. Clearly this was different conduct involving different drugs, during a different time frame and with an underlying factual basis that consisted not of the act of delivery itself, but of the conspiracy to sell. The act of conspiring to sell marijuana over a long period of time is different in time, space and manner than one instance of delivering cocaine. Not only do the charges involve different types of acts, the acts are also different in nature—the defendant had sufficient time between the acts to again commit himself. The conduct involved different invasions of interests and different intentions making the defendant subject to multiple punishments. The state charge is therefore not the same conduct as that conduct resulting in the federal convictions by any stretch.

¶ 15.    We must reject Bautista's attempt to paint his case with a broad brush to say that since marijuana and cocaine are both controlled substances, it does not matter that two different drugs were involved. And we must also reject the idea that because the conspiracy charge overlapped one of the cocaine delivery charges, this was all part of the same trafficking conspiracy. Rather, we look to the underlying actions, the "thing done" or the "deed"[4] that gave rise to the conspiracy conviction on the one hand and the "thing or deed" done that gave rise to the discrete act of selling which formed the basis of the other conviction. If the two deeds or things involved different conduct, the proverbial "fork in the road," then they can be prosecuted by dual

———————
[4] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 20 (unabr. 1993), defines an act as "a thing done or being done:   DEED."

sovereigns without running afoul of WIS. STAT. § 961.45. We therefore affirm the conviction for conspiring to sell marijuana.

*By the Court.*—Judgment affirmed.