COURT OF APPEALS
DECISION
DATED AND FILED

June 1, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2021AP519-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2014CF1362

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LEON GARRETT, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS and STEPHANIE ROTHSTEIN, Judges. *Affirmed*.

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Leon Garrett, Jr. appeals his judgment of conviction for one count of first-degree sexual assault of a child under the age of thirteen, and one count of exposing his genitals to a child. He also appeals the order denying his postconviction motion. Garrett argues that his trial counsel was ineffective for failing to introduce evidence that the victim had a history of suffering from cold sores that predates the assault by Garrett, and without this evidence there was nothing to counter the inference from other testimony that the sore on the victim's lip was the result of the sexual assault by Garrett. Upon review, we affirm.

**BACKGROUND**

¶2 The charges against Garrett stem from an incident that occurred in March 2014 when the victim, M.L.T., was seven years old. According to the criminal complaint, M.L.T. stated that she knew Garrett because he was her mother's friend. She told police that she was on an overnight visit to Garrett's house when he woke her up, took her into the bathroom, and exposed his penis to her. She said that he tried to put it in her mouth; she kept her lips closed, but his penis did touch her lips. M.L.T. said that Garrett also kissed her on the lips, using his tongue.

¶3 Approximately two days after that overnight stay, M.L.T.'s mother, S.L., noticed a bump on M.L.T.'s lip and asked M.L.T. about it. M.L.T. then told S.L. about the assault. S.L. took M.L.T. to the hospital, where she was diagnosed with herpes.

¶4 Garrett was arrested and charged with child enticement, exposing his genitals to a child, and first-degree sexual assault of a child. At a pretrial hearing, the State moved that any information relating to M.L.T.'s herpes diagnosis be precluded from being introduced. The State observed that S.L. had indicated in M.L.T.'s medical records that she had a history of cold sores, and "[t]hus, the herpes

2

cannot be connected to [Garrett]." The trial court granted the motion, and further stated that there was to be no testimony regarding whether Garrett had herpes.

¶5      The matter proceeded to trial. The first trial, held in February 2015, resulted in a mistrial due to a hung jury. At the second trial[1] held in August 2016, M.L.T. testified about the assault by Garrett as she had described it to the police. M.L.T. further testified that she told her mother what had happened after she noticed a bump on M.L.T.'s lip. On cross-examination, M.L.T. stated "I really do get bumps on my lip a lot because I have like a cold. It's like a cold bump." She also said that she had told her mother the bump may have been there "because [Garrett] kissed me."

¶6      S.L. also testified. Prior to her testimony, out of the presence of the jury, Garrett's trial counsel[2] raised the issue of a line of questioning he wanted to pursue relating to whether S.L. believed that Garrett "was likely to molest children[.]" S.L. had told the police that she saw some paperwork at Garrett's home regarding a prior charge of sexual assault of a minor, for which he was acquitted. That charge involved an allegation that the victim had contracted herpes, but a doctor at that trial testified that Garrett did not have herpes at that time. Counsel sought to present a theory of defense that S.L. was angry with Garrett for denying her request to live with him on a long-term basis, and, in retaliation, she manufactured the current sexual assault allegation using the same pretense as the earlier charge against Garrett.

---

[1] Garrett's first trial was before the Honorable Daniel L. Konkol; his second trial was before the Honorable Mark A. Sanders. We refer to both of them as the trial court.

[2] Garrett's trial counsel for the second trial was a different attorney.

¶7      The trial court denied counsel's request. The court acknowledged that this line of questioning was relevant; however, because of the prior ruling on the State's motion in limine which precluded any testimony relating to M.L.T.'s herpes diagnosis, counsel was not allowed to "get into that part." Therefore, the court excluded that line of questioning, finding that there was a "low level" of relevance without the herpes information, and further, there would be a "high risk" of broaching that excluded evidence with such testimony.

¶8      S.L. testified that M.L.T. told her about the assault by Garrett after S.L. noticed that her lip was "swollen." On cross-examination, trial counsel asked S.L. about the timing of M.L.T. telling her about the assault: that S.L. "noticed a bump on your daughter's lip that looked like herpes, so then you asked her what happened … ?"

¶9      Additionally, the police officer who conducted a forensic interview of M.L.T. testified. The officer stated that M.L.T. had described the assault to her during that recorded interview, using a diagram and anatomically correct dolls; the video of the interview was played for the jury. On cross-examination, Garrett's trial counsel again asked about the "bump" on M.L.T.'s lip, and whether M.L.T. "associated" it with the assault. The officer indicated that M.L.T. told her that the bump was from Garrett "kiss[ing] her and put[ting] his stuff in her mouth." The officer described the bump as "some sort of abrasion" that "looked like a cold sore," but the officer stated that she did not know exactly what it was.

¶10      Also testifying was the pediatrician who examined M.L.T. after the assault, Dr. Kelly Hodges. Dr. Hodges testified that M.L.T. had no physical injuries besides the bump on her lip, which "appear[ed] to be a cold sore[.]" Furthermore,

Dr. Hodges stated that there was nothing that indicated that the cold sore was the result of a sexual assault.

¶11 Garrett testified in his own defense. He stated that on the night of the assault, S.L. had come to his home with her daughters and "five or six bags," as opposed to just an overnight bag. Furthermore, he said that prior to that night, S.L. had told him that he "need[ed] to put a roof over her head," which he told her he could not do. Garrett denied assaulting M.L.T., stating that he heard of the sexual assault allegations from S.L. a few days after that overnight stay. He said that when S.L. accused him of the assault, he asked her, "What are you trying to do, blackmail me?"

¶12 The jury convicted Garrett of first-degree sexual assault of a child under the age of thirteen and exposing his genitals to a child; it acquitted him on the charge of child enticement. He was sentenced to fifteen years of initial confinement and five years of extended supervision for the sexual assault conviction, and eighteen months of initial confinement followed by twenty-four months of extended supervision for the exposing of his genitals charge, to be served consecutively.

¶13 Garrett filed a postconviction motion arguing that his trial counsel was ineffective for failing to introduce evidence that M.L.T. had a history of cold sores. The postconviction court[3] held an evidentiary hearing in February 2021, where his trial counsel testified regarding the claim. Counsel explained that the trial court's earlier ruling regarding M.L.T.'s herpes diagnosis "precluded [him] from putting on the defense [he] wanted to put on," and thus his trial strategy had to "shift."

---

[3] Garrett's postconviction motion and evidentiary hearing were before the Honorable Stephanie Rothstein; we refer to her as the postconviction court.

¶14 The postconviction court found that counsel testified "clearly and unequivocally" about the effect of the pretrial ruling regarding M.L.T.'s herpes diagnosis on his trial strategy, and that "it was with the [trial] [c]ourt's pretrial ruling firmly in mind that he went forward." In particular, the postconviction court noted Dr. Hodges' testimony that she was unable to link the "bump" on M.L.T.'s lip to a sexual assault. Furthermore, the postconviction court found that counsel's strategy "very well could have been affected by" M.L.T.'s young age. Thus, the court did not find counsel's strategic decisions to be "unreasonable or unprofessional," and therefore not deficient. Moreover, the court indicated that even if counsel's performance could be deemed deficient, it was "cured" by Dr. Hodges' testimony, and further, the record demonstrates that at no time was it "implied that the sore was anything other than a cold sore."

¶15 Therefore, the postconviction court denied Garrett's motion. This appeal follows.

## DISCUSSION

¶16 On appeal, Garrett maintains that his trial counsel was ineffective for failing to introduce evidence of M.L.T.'s history of suffering from cold sores prior to the assault "to counter the clear implication of the testimony" that the bump on M.L.T.'s lip "was the result of and evidence of a sexual assault" by Garrett. To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "must prevail on both parts of the test to be afforded relief." *State v. Allen*, 2004 WI 106, ¶26, 274 Wis. 2d 568, 682 N.W.2d 433. We review *de novo* "'the legal questions of whether deficient performance has been established and whether it led to prejudice

rising to a level undermining the reliability of the proceeding.'" ***State v. Roberson***, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted). However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." ***State v. Smith***, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶17 Based on the record before us in this case, we choose to focus on the prejudice prong of the ***Strickland*** test. *See **id.***, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). To demonstrate prejudice, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." ***Id.*** at 687. However, a defendant "cannot meet this burden by simply showing that an error had some conceivable effect on the outcome." ***State v. Koller***, 2001 WI App 253, ¶9, 248 Wis. 2d 259, 635 N.W.2d 838. Rather, establishing prejudice "means showing that counsel's alleged errors actually had some adverse effect on the defense." ***Id.***

¶18 Garrett argues that he was prejudiced by his trial counsel's failure to present evidence to eliminate him as the cause of the cold sore on M.L.T.'s lip, because the jury was left to infer from the testimony that the sexual assault by Garrett was the source of the sore. However, Garrett has not established that any error by his trial counsel "actually had some adverse effect on the defense." *See **id.*** In the first place, the record indicates there was other evidence relating to the sexual assault that was sufficient to support Garrett's conviction. Specifically, the jury heard M.L.T.'s testimony regarding the assault, as well as hearing the testimony of the officer who conducted her forensic interview and viewing the video from that interview. The jury also heard S.L.'s testimony regarding her discussion with M.L.T. about the assault.

¶19     Furthermore, the jury heard evidence that could have offset any perceived link between M.L.T.'s cold sore and the assault. Specifically, the jury heard Dr. Hodges' testimony that she discovered no physical evidence of a sexual assault during her examination of M.L.T., and that the source of M.L.T.'s cold sore was unknown. M.L.T. also testified that she often suffered from cold sores, although there was no time frame attached to that statement.

¶20     Additionally, the jury heard evidence relating to Garrett's culpability. Garrett denied assaulting M.L.T. during his testimony; he also claimed that the assault allegations were in retaliation for his refusal to allow S.L. to move in with him. Furthermore, the jury heard an admission by M.L.T. that her memory of the assault at the time of the trial was "a little fuzzy," although she stated that she had told "the truth" to the officer who conducted the forensic interview. It is up to the jury to "determine the credibility of the witnesses and the weight to be afforded their testimony," *see Nowatske v. Osterloh*, 201 Wis. 2d 497, 511, 549 N.W.2d 256 (Ct. App. 1996), and we are bound to accept the reasonable inferences that the jury drew from that evidence, *see State v. Forster*, 2003 WI App 29, ¶2, 260 Wis. 2d 149, 659 N.W.2d 144.

¶21     Therefore, because the jury heard evidence beyond the issue of M.L.T.'s cold sore that was sufficient to support Garrett's conviction, we conclude that the outcome of Garrett's trial was not unreliable. *See Strickland*, 466 U.S. at 687. As a result, he has not established that he was prejudiced by any potential deficiencies in his trial counsel's performance. *See id.* Accordingly, we affirm his judgment of conviction and the order denying his postconviction motion.

        *By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.